304 So.2d 507 (1974)
ZINKE-SMITH, INC., Appellant,
v.
FLORIDA INSURANCE GUARANTY ASSOCIATION, INC., Appellee.
No. 73-821.
District Court of Appeal of Florida, Fourth District.
November 8, 1974.
On Rehearing December 13, 1974.
*508 James B. Byrne, Jr., Altamonte Springs, for appellant.
Emory P. Cain, for Proctor & Cain, Jacksonville, for appellee.
OWEN, Chief Judge.
In what appears to be a case of first impression, we are called upon to determine whether a self-insured employer under the Florida Workmen's Compensation Act who has an unpaid claim against its insolvent excess insurer may qualify such claim as a "covered claim" emanating from a form of direct insurance within the scope of the Florida Insurance Guaranty Association Act (Part II of Chapter 631, Florida Statutes).
Appellant, Zinke-Smith, a self-insured employer as defined in Section 440.38(1)(b), F.S., brought this action against Florida Insurance Guaranty Association, Inc. (hereinafter FIGA), a non-profit corporation created under Part II, Chapter 631, Florida Statutes, to recover a loss which appellant sustained when its excess insurer, Home Owners Insurance Company, became insolvent and unable to pay to appellant certain claims within the coverage of the policy. The complaint alleged the happening of various conditions precedent to the bringing of the suit, and had attached to it a copy of the policy of insurance titled "Aggregate Excess Workmen's Compensation and/or Employer's Liability and/or Occupational Disease Policy". Under this policy, Home Owners agreed to indemnify Zinke-Smith for certain losses in excess of stated figures or percentages on account of workmen's compensation benefits for which Zinke-Smith, as employer, might become liable, the insurer to reimburse the employer directly for all payments due under the policy, or if the employer became insolvent, to pay the compensation or other benefits due direct to the employee. Appellant suffered dismissal of the complaint with prejudice upon the determination made by the trial court that the policy was not direct insurance and that appellant's claim was not a "covered claim" within the scope of the Act (Part II, Chapter 631, Florida Statutes). We conclude that this was error and reverse.
Section 631.52, F.S. provides as follows:
"This part shall apply to all kinds of direct insurance except life, title, surety, disability, credit, mortgage guaranty, and wet marine insurance." (emphasis supplied)
All agree that the legislature intended the act to have no applicability to insurance which was not "direct insurance". However, nowhere in the Act, or in Florida Statutes generally, is the term "direct insurance" defined. Nor does it appear that "direct insurance" is a term of art in insurance law generally. The simple word "direct" when used as an adjective is readily and commonly understood to mean immediate; without deviation or interruption; by the shortest route; without circuity; without any intervening medium, agency or influence; etc. Thus, "direct insurance" as used in the Act refers to an insurance contract between the insured and the insurer which has accepted the risk of a designated loss to such insured, which relationship is direct and uninterrupted by the presence of another insurer. The insurance policy involved in this case met that simple test.
*509 But, appellee contends (and the trial court ruled) that because Zinke-Smith was a self-insurer under the Workmen's Compensation Act, the policy involved in this case was a policy of "reinsurance", and being a policy of reinsurance it could not qualify as "direct insurance", nor could any claim thereunder meet the definition of "covered claim" as set out in Section 631.54(4), F.S., the last sentence of which reads as follows:
"`Covered claim' shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise." (emphasis supplied)
While a policy of reinsurance would, of course, be direct insurance as between the parties thereto, i.e., the insurer-reinsured on the one hand and the reinsurer on the other hand, we agree that as concerns the scope of the Act, the same was not intended to apply to reinsurance. Furthermore, the insolvency of a reinsurer could not be the basis of a "covered claim" on behalf of an insurer-reinsured since a claim against a reinsurer would necessarily involve "an amount due an insurer". The decisive issue here, then, is whether Zinke-Smith, having elected to become a "self-insurer" (as defined in Section 440.38, F.S.) was thereby an "insurer" within the meaning of Section 631.54(4), F.S., so that the policy of insurance with Home Owners was simply a form of reinsurance rather than merely one of excess liability.
Chapters 624 through 632, inclusive, of the Florida Statutes constitute the Florida Insurance Code, and Section 624.03 defines insurer as follows:
"`Insurer' includes every person engaged as indemnitor, surety, or contractor in the business of entering into contracts of insurance or of annuity."
When the legislature provided in Section 631.54(4), F.S. that "`covered claim' shall not include any amount due any ... insurer ...", it must have intended the word "insurer" to have the same meaning as that expressed in Section 624.03, F.S. The complaint alleged no facts that would bring Zinke-Smith within that definition. On the contrary, the allegations show it to be simply an employer liable for compensation to its employees under the provisions of the Workmen's Compensation law,[1] who had elected to secure the payment of such compensation in part by complying with Section 440.38(1)(b), F.S., and in part (where the compensation benefits exceeded certain amounts) by complying with Section 440.38(1)(a), F.S. Merely because an employer who secures compensation in accordance with Section 440.38(1)(b), F.S. is known as a "self-insurer, does not convert such employer into an "insurer as the same is defined and considered in the insurance code.[2] The policy involved here is not one of reinsurance, which has been defined as a contract that one insurer makes with another to protect the first insurer from a risk it has already assumed, McDonough Construction Corp. v. Pan American Surety Co., Fla.App. 1966, 190 So.2d 617, at 619, but is merely that which it is clearly titled, i.e., excess insurance. It is analogous to the more common types of direct insurance such as automobile collision coverage or major medical coverage, wherein there is usually a stated deductible amount, the effect of which is, in simplest terms, to make the insured "self-insured for any loss up to the amount of the deductible. No one has yet to suggest in such instances that the insured, being self-insured up to the amount of the deductible, is an "insurer" who has merely "reinsured" the risk above a certain limit.
In summary, we hold that the policy of insurance involved in this case was "direct *510 insurance within the scope of the Florida Insurance Guaranty Association Act, and that Zinke-Smith was not an insurer such as would prevent any amount due it from qualifying as a "covered claim" under Section 631.54(4), F.S.
Appellant's complaint had also sought attorney's fees under Section 627.428(1), F.S.[3] At the same time appellee filed its motion to dismiss the complaint, appellee also filed a motion to strike appellant's request for this statutory attorney's fee. While it would not have been necessary for the court to rule on the motion to strike (in view of its determination to dismiss the complaint with prejudice), the order dismissing the complaint did expressly rule that Section 627.428, F.S. was applicable in proper cases against FIGA. The appellee has cross-appealed from this portion of the order. We conclude that Section 627.428, F.S. is not applicable to suits against FIGA. The latter is not an "insurer", nor would any judgment against FIGA be "under a policy or contract executed by it"; rather, FIGA is a public corporation created by the legislature as a mechanism to aid and benefit certain insureds who have suffered loss as a result of the insolvency of their insurers. O'Malley v. Florida Insurance Guaranty Association, Fla. 1971, 257 So.2d 9.
Reversed and remanded for further proceedings consistent herewith.
CROSS and MAGER, JJ., concur.

ON PETITION FOR REHEARING
Appellant and appellee each filed a timely petition for rehearing. Appellee's petition for rehearing is denied. Appellant's petition for rehearing is granted without oral argument.
In our opinion filed November 8, 1974, we held that Section 627.428, F.S. was not applicable to suits against FIGA because FIGA was not an "insurer", nor would any judgment against FIGA be "under a policy or contract executed by it". Appellant suggests that in so holding we must have overlooked the provisions of Section 631.57(1)(b), F.S. which read as follows:
"631.57 Powers and duties of the association. 
"(1) The association shall:
* * * * * *
"(b) Be deemed the insurer to the extent of its obligation on the covered claims, and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent."
Indeed, we did overlook the provisions of Section 631.57(1)(b), F.S. We agree with appellant that the effect of that statute is to make FIGA an "insurer" on the "covered claim", which latter term is defined under Section 631.54(4), F.S. as "an unpaid claim... which arises out of and is within the coverage... ." Thus, we now conclude that Section 627.428, F.S. is applicable to suits against FIGA and we recede from that portion of our original opinion filed November 8, 1974 holding to the contrary. In all other respects, our original opinion remains undisturbed.
CROSS and MAGER, JJ., concur.
NOTES
[1] It is the employer who is responsible to furnish the benefits to employees. Iowa National Mutual Insurance Co. v. Webb, Fla. 1965, 174 So.2d 21.
[2] Oklahoma avoids this fiction and confusion by calling its self-insured employers "own risk" employers. See, Cities Service Gas Co. v. Witt, Okl. 1972, 500 P.2d 288.
[3] "627.428 Attorney fee.  (1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of an insured or the named beneficiary under a policy or contract executed by the insurer, the trial court, or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court, shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had."