945 P.2d 805

**ARIZONA LIFE & DISABILITY INSUR-
ANCE GUARANTY FUND, an Arizona
State Agency, Plaintiff/Counterdefen-
dant/Appellant.**

v.

**HONEYWELL, INC., a Delaware corpora-
tion, and First Trust National Associa-
tion, a corporation, Defendants/Counter-
claimants/Appellees.**

No. CV–96–0381–PR.

Supreme Court of Arizona,
En Banc.

Sept. 16, 1997.

Grant Woods, Attorney General by W. Mark Sendrow, Assistant Attorney General, Phoenix, and Guttilla & Murphy, P.A. by Nicholas C. Guttilla, Phoenix, for Plaintiff–Counterdefendant–Appellant.

Snell & Wilmer L.L.P. by John J. Bouma, Phoenix, Patrick G. Byrne and Popham, Haik, Schnobrich & Kaufman, Ltd. by David L. Hashmall, Karen R. Cole, Minneapolis, MN, for Defendants/Counterclaimants/Appellees.

## OPINION

JONES, Vice Chief Justice.

The parties seek review of the court of appeals' ruling concerning guaranteed investment contracts (GICs) issued by the Executive Life Insurance Company (ELIC) to the trustee of certain employee retirement plans established by Honeywell, Inc. (Honeywell).

See *Arizona Life & Disability Ins. Guar. Fund v. Honeywell, Inc.*, 187 Ariz. 146, 927 P.2d 806 (1996). The trustee of Honeywell's retirement plan (Trustee) purchased GICs from ELIC, which was subsequently declared insolvent. Honeywell and the Trustee then submitted a claim to the Arizona Life and Disability Insurance Guaranty Fund (Fund) to cover the retirement plan's losses. The Fund sought a declaratory judgment that Arizona law excluded the GICs from coverage. The trial court entered summary judgment for Honeywell and the Trustee, but the court of appeals reversed. We granted review to decide whether the ELIC GICs are "annuities" as defined under A.R.S. § 20–254.01 and whether the GICs are "direct contracts" "issued to" Arizona residents as required by A.R.S. § 20–682(A). We have jurisdiction pursuant to Arizona Constitution article VI, section 5(3), and Arizona Rule of Civil Appellate Procedure 23.

### Facts and Procedural History ·

#### A. Background

Honeywell is a Delaware corporation headquartered in Minnesota that operates a number of Arizona manufacturing plants and research facilities. Honeywell offered voluntary retirement plans to employees, including an investment option termed the Investment Plus Plan (Plan).[1] The Plan provided investment funds from which an employee could allocate tax-deferred contributions. One such fund, the Protected Interest Fund (also known as a fixed income fund) was described in Honeywell's informational brochure as follows:

*Protected Interest Fund*—This fund provides safety of principal and a guaranteed rate of return. All the money in the fund is invested in insurance contracts. Honeywell negotiates the contracts twice a year to obtain the best possible rates under current market conditions. Assets in the fund earn a blended rate which is calculated by averaging the guaranteed rates of the previous and current individual contracts, weighted by the dollar balance in

---

1. For the purposes of this opinion we refer to the Investment Plus Plan of Honeywell, Inc., amend- ed and restated as of January 1, 1988.

each contract. Rates are announced each time a contract is negotiated.

Approximately 7600 Arizona Honeywell employees participated in the Protected Interest Fund, which included, among its investments, GICs from a number of insurance companies. In January and April 1988, the Trustee, IDS Bank & Trust Company,[2] purchased four GICs from ELIC. The net value of the ELIC GICs attributable to Arizona residents at the time of ELIC's insolvency was approximately $21 million. ELIC GICs accounted for sixteen percent of all GICs included in Honeywell's fixed income fund from which participants earned a weighted average rate of return.

ELIC ceased making required principal and interest payments in April 1991 and was declared insolvent in December 1991. As a result, Honeywell filed a claim with the Fund for losses of approximately $3.2 million, plus interest. Because it disputed that the ELIC GICs were covered, the Fund sought declaratory relief in Maricopa County Superior Court, asking the court to declare that the ELIC GICs were not covered under Arizona's insurance guaranty act. After the Fund moved for summary judgment, Honeywell and the Trustee filed a cross-motion for summary judgment. The court entered judgment for Honeywell and the Trustee, and the Fund appealed.

The court of appeals held that the ELIC GICs were not annuity contracts under Arizona statutes, and thus not covered by the Fund. Honeywell and the Trustee have petitioned on this issue. Additionally, the court of appeals ruled in favor of Honeywell and the Trustee on two issues, holding that the GICs were issued to Arizona residents, and that the GICs are direct annuity contracts. The Fund has cross-petitioned on these two issues. Our review addresses all three issues.

## B. ELIC GIC provisions

Under the terms of the ELIC GICs, the Trustee was the legal owner of the contracts and was able to "exercise every contract right and enjoy every contract provision without the consent of any participant." The Trustee deposited with ELIC the participants' investments on a specified date. In return, ELIC agreed to pay interest annually at a set rate throughout the entire contract period. ELIC contracted to repay the fund value of three of the four GICs in periodic installments; that is, ELIC would repay specified percentages of the principal in annual payments over a set number of consecutive years. ELIC agreed to repay the entire principal for the fourth GIC on a single maturity date. The GICs defined fund value as "the sum of all deposits, less any withdrawals and scheduled payments, plus interest earned at the guaranteed rate...."

The GICs, and the Plan as incorporated by the GICs, provided options for participants to withdraw their investments prior to the contract maturity date. For example, the GICs allowed the Trustee to withdraw the annuity value needed to purchase an individual annuity contract for a participant upon retirement. Under the GICs, at established intervals participants could also require the Trustee to reallocate funds from the GICs to other investment options offered by the Plan. Moreover, the contract allowed the Trustee to fulfill Plan benefit requirements such as the distribution of benefits upon the participant's termination of employment, death, disability, or retirement. Upon retirement of a participant, the Plan required payment in a lump sum. Upon the death of the participant, the Plan provisions required a lump sum distribution to the participant's beneficiary. If the Trustee withdrew funds before the contract maturity date, ELIC made no more interest payments on those funds.

## C. Arizona statutory authority

In 1977 the Arizona Legislature adopted, with modification, the 1975 Life and Health Guaranty Association Model Act of the National Association of Insurance Commissioners. See Life and Disability Insurance Guaranty Fund Act, 1977 Ariz. Sess. Laws ch. 136, § 4 (codified as amended at Article 7,

---

**2.** In 1993, First Trust Company succeeded IDS Bank & Trust as Trustee of the Honeywell retirement plans.

chapter 3 of Title 20, A.R.S. §§ 20–681 to – 695). Article 7 applies to insurance guaranty fund protection and encompasses "direct life insurance policies, disability insurance policies, annuity contracts and contracts supplemental to life and disability insurance policies and annuity contracts issued to residents of this state by persons authorized to transact insurance in this state. . . ." A.R.S. § 20–682(A).[3] Article 7 mandates that "[a]ll member insurers shall be members of the fund as a condition of their authority to transact insurance in this state." A.R.S. § 20–683(A). A member insurer is a "person authorized to transact any kind of insurance to which this article applies." A.R.S. § 20–681(4). The Fund is expressly obligated to guarantee losses of residents' covered policies arising from the insolvency of non-Arizona insurers. A.R.S. § 20–685(D).

Although the Arizona Legislature did not include within Article 7 a statement of purpose, the 1975 Model Act explained that

> [t]he purpose of this Act is to protect policy owners, insureds, beneficiaries, annuitants, payees, and assignees of life insurance policies, health insurance policies, annuity contracts, and supplemental contracts, subject to certain limitations, against failure in the performance of contractual obligations due to the impairment or insolvency of the insurer issuing such policies or contracts.

1975 Life and Health Guaranty Association Model Act of the National Association of Insurance Commissioners § 2.

In 1995, the Legislature amended A.R.S. § 20–682 to expressly exclude GICs from coverage under the Fund:

> 4. Any guaranteed investment contract or any part of a guaranteed investment contract that is issued by a life insurance company, unless the contract holder exercises an annuity option for individual persons provided by the guaranteed investment contract on or before the date the life insurance company becomes subject to a delinquency proceeding as defined in § 20–611.

A.R.S. § 20–682(B)(4) (Supp.1995). The Legislature made this amendment prospective only; it is not applicable to litigation, including the instant case, that was pending as of March 29, 1995.

▮▮▮▮ When, as in the present case, neither explicit text nor statement of legislative intent resolving the precise issue is provided to the court, we must resolve any ambiguity by considering the legislature's overall purposes and goals in enacting the body of legislation in question. If possible, we attempt to interpret the questioned statutory provision in a manner that will carry out and fulfill those goals. *See Lowing v. Allstate Ins. Co.*, 176 Ariz. 101, 103–04, 859 P.2d 724, 726–27 (1993). As the Model Act indicates, the statute in question was adopted to protect individual purchasers of life insurance and annuity contracts from losses resulting from failure of the insurer. The obvious aim of the statutes establishing the fund in question and similar funds was to spread the risk of loss resulting from an insurer's insolvency among all insurers engaged in selling life and annuity contracts.

### D. Court of Appeals' decision

The court of appeals framed the issue as follows: "The question of the Fund's obligation to cover the losses suffered by Honeywell's employee retirement plan after ELIC's liquidation depends on whether the GIC's are included in A.R.S. § 20–682 as 'annuity contracts . . . issued to residents of this state. . . .' " 187 Ariz. at 150, 927 P.2d at 810. The court found that the ELIC GICs were issued to Arizona residents and that the contracts could not be disqualified from coverage on the ground that they were not direct annuities. As noted, the Fund has filed cross petitions for review on these issues. However, the court of appeals reversed the trial court's grant of summary judgment to Honeywell and the Trustee, concluding that the ELIC GICs were not annuity contracts under the definition provided in A.R.S. § 20–254.01. Central to the court's

---

**3.** The definitions of the scope of Article 7 and the 1975 Model Act are virtually identical, except that the Model Act includes health insurance policies, and section 20–254.01 substitutes disability insurance policies.

decision was that section 20–254.01 requires that payment from the annuity contracts be dependent upon the continuance of human life. The court expressly recognized that the Honeywell Retirement Plan allowed for distribution of benefits when a participating employee died.[4] Nonetheless, the court concluded that the Plan trustee could elect to withdraw the dollar value of the decedent's accounts from *any* of the contracts within the protected interest fund option and thus found that the Trustee's withdrawal of funds from the ELIC GICs was discretionary, not mandatory. Therefore, the court reasoned, "ELIC's payments were not affected by the death of an employee alone, but were affected only if the trustee also elected to pay the employee's benefits by a withdrawal from the GIC. This further condition means that payments under the GIC's [sic] did not depend on the continuance of human life." 187 Ariz. at 152, 927 P.2d at 812.

The court also considered Honeywell's argument that the GICs qualified as annuities under the Plan's provisions requiring ELIC, upon the Trustee's request, to issue an annuity to a retiring employee. Finding the purchase of such an annuity too speculative, the court rejected the argument.

### DISCUSSION

### A. Does the definition of annuities in A.R.S. § 20–254.01 apply to the ELIC GICs?

#### 1. Title 20 definition of annuity

■ The term "annuities" for the purposes of Title 20 (Insurance) of the Arizona Revised Statutes is defined at A.R.S. § 20–254.01:

"Annuities" encompass all agreements to make periodic payments, other than contracts defined by § 20–254 as "life insurance", where the making or continuance of all or of some of a series of such payments, or the amount of any such payment, is dependent upon the continuance of human life. Except as exemption or other provi-

sion is made, all provisions in this title applicable to life insurance shall be deemed applicable also to annuities.

We recognize that this definition of an annuity differs somewhat from the ordinary meaning of the term. However, because our Legislature adopted a specialized meaning for annuities, we need not consider arguments premised on the difference between the ordinary meaning of this term and the Title 20 meaning. *See Mail Boxes v. Industrial Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995) ("The primary rule of statutory construction is to find and give effect to legislative intent."). Instead, we observe that under the Title 20 definition, an annuity need only be, except as specified, an agreement falling within the scope of Article 7 to make periodic payments under which the following factors are dependent on the continuance of a person's life: (1) making or continuing all or only some of a series of the periodic payments; or (2) the amount of the periodic payment.

#### 2. The ELIC Guaranteed Investment Contract

The contract between ELIC and the Honeywell Retirement Plan provided:

*Withdrawal for Participant Benefits.* The Owner may direct the Company to purchase an individual annuity contract for a participant before the retirement date. The company will withdraw the cost of annuity benefits for the participant on the date it withdraws the amount. The Owner may also withdraw all or part of the fund value *to provide for Plan benefits,* in accordance with the Plan's provisions.

Group Limited Premium Deposit Pension Contract, ELIC Contract Number CG01291A3A, issued April 4, 1988 (emphasis added). The Plan in turn required that the dollar value of a deceased participant's accounts would be paid to her beneficiary as soon as was practicable. Section 7.3 of the Plan required in part:

---

4. Under the Plan, upon a participant's death, "the remaining value of the Member's Account, if any, shall be distributed in the form of a lump sum distribution to the Member's beneficiary ...

as soon as reasonably practicable...." Investment Plus Plan of Honeywell, Inc. (Amended and restated as of January 1, 1988), § 7.3.

*Distribution Upon Death.* Upon a Member's death, the remaining value of the Member's Account, if any, *shall be distributed* in the form of a lump sum distribution to the Member's beneficiary, as follows:

. . . .

(b) If a Member dies after his or her Required Beginning Date, the remaining aggregate value of such Member's Account at the time of death, if any, *shall be distributed* as soon as reasonably practicable to the Member's beneficiary.

(Emphasis added).

Honeywell asserts that because the Plan required that a decedent participant's funds be withdrawn from the Plan, this withdrawal would require the distribution of a percentage of each ELIC GIC equal to its percentage of the total value of Plan investments. Under such circumstances, Honeywell argues, the ELIC GICs require the making of a life-contingent payment, thus falling within the A.R.S. § 20–254.01 definition of an annuity. The Fund counters that the Plan provision permitting the withdrawal of all or part of the fund value for "plan benefits" allowed withdrawal for a number of reasons, many of which are not life-contingent, for example, retirement, disability, termination of employment, reaching the age of 59½, and divorce. Furthermore, the Fund suggests that the requirement to disburse funds upon a participant's death was imposed not by the Plan, but by the Internal Revenue Code (26 U.S.C. § 401). The Fund admits that this requirement is life-contingent but argues that that does not qualify the GIC as an annuity because the requirement was imposed by the Code. If these distribution requirements create an annuity, the Fund claims, then all 401(k) retirement plans are annuities under the statute. The Fund concludes that this would be absurd and could not have been intended by the Legislature. Furthermore, the Fund suggests that GICs are no more like an annuity under section 20–254.01 than a bank certificate of deposit, a mutual fund, or a bond. Honeywell's argument persuades us that the ELIC GICs are annuity contracts within the meaning of section 20–254.01 by reason of the mandatory requirement of pro rata distribution on death.

### 3. Analysis

We first observe that nothing in the section 20–254.01 definition of annuity supports Arizona Life & Disability Insurance Guaranty Fund's (appellant) argument that because the Plan allows the withdrawal of funds for reasons other than the death of the participant, this somehow exempts GICs from the section 20–254.01 definition of annuities. Similarly, we can fathom no reason for ignoring the payment-on-death provisions of the Plan simply because the Internal Revenue Code also requires it.

More importantly, we conclude that the court of appeals erred in finding that the GICs are not life-contingent. The court mistakenly concluded that the trustee could elect to pay a decedent's account from any of the GIC accounts in the fixed income option, leaving the ELIC GICs unaffected by the death of the participant. The court reasoned that "Honeywell's interpretation of the statute would require us to hold that a contract is an annuity if the making or amount of the payments 'may' depend on the continuance of human life, or if the payments 'potentially' depend upon the continuance of human life." 187 Ariz. at 152, 927 P.2d at 812. We find this conclusion is refuted by the record.

The Plan's GIC bidding specifications required that "withdrawals from the Protected Interest Fund for 'plan benefits' are made from *all [guaranteed investment] contracts, each in proportion to its share of Fund assets held."* Honeywell Investment Plus Plan—Honeywell Retirement Savings Plan, GIC Bidding Specifications, "Investment Structure" at. 2, (emphasis added). The bidding specifications define "plan benefits" to include "disbursements upon retirement, death, disability, or termination of employment, and for in-service withdrawals and participant-elected transfers to another investment choice." *Id.* at 3. An affidavit of Christopher M. Maisel, special counsel to ELIC, asserts that ELIC followed the GIC bidding specifications in formulating its bid for the GIC eventually sold to Honeywell's trustee. We conclude, therefore, that upon

the death of a participant the Honeywell Plan mandated withdrawals from the ELIC GICs and all other contracts within the protected interest fund.

In *Board of Trustees of the Maryland Teachers & State Employees Supplemental Retirement Plans v. Life & Health Insurance Guaranty Corp.*, 335 Md. 176, 642 A.2d 856 (1994), a public employee's retirement plan featured a similar arrangement. Maryland Code article 48A, section 65 defined annuities as "all agreements to make periodic payments where the making or continuance of all or some of a series of such payments, or the amount of any such payment, is dependent upon the continuance of human life.... An 'annuity contract' is a contract providing for an 'annuity' as defined in this section." Because this mirrors the A.R.S. § 20–254.01 definition of annuity, the Arizona Court of Appeals directly addressed the Maryland high court's ruling that the ELIC GICs were life-contingent, and thus covered by the Maryland guaranty fund. The Maryland court reasoned:

> The [Maryland Guaranty Association] contends that "[t]he limited withdrawal provisions in the ELIC GICs" are not "life-contingent." ... We disagree. *ELIC could be called upon, whenever a participant died, to pay its pro rata share of that participant's account in the Plan* .... The actual return which ELIC might have realized on its investment of the premium deposits ... could have been below the amount which ELIC had promised to pay to the Board. Thus, ELIC's assumption of the economic risk was life-contingent.

642 A.2d at 861 (emphasis added). In rejecting this holding in *Board of Trustees*, our court of appeals declared:

> We disagree with the conclusion in *Board of Trustees* that the death benefit payout provision makes the GIC's themselves life-contingent. The court in *Board of Trustees* noted that ELIC *could* be called upon to pay sums out of the fund value of the GIC's if an employee died. The very rationale in that case was that it was sufficient that ELIC's payments were *potentially* life-contingent. We do not agree that the

definition of annuity under Arizona law can be read to include an arrangement that makes the life-contingent nature of the periodic payments speculative.

187 Ariz. at 153, 927 P.2d at 813.

The above excerpt indicates to us that the court of appeals misunderstood the Maryland court's use of the word "could." Although the Maryland court stated "ELIC could be called upon, whenever a participant died, to pay its pro rata share of that participant's account in the Plan[,]" the *Board of Trustees* court's use of the word "could" did not, as the court of appeals concluded, denote that the Trustee had the option to not pay a deceased participant's account out of an ELIC GIC. The meaning of "could" in that particular section of *Board of Trustees* referred instead to the possibility that a participant would die before the maturity date of the contract. That this is what the Maryland court intended is illustrated in an additional excerpt of the opinion:

> There is also a provision that *requires all withdrawals to be made on a pro rata basis*. This pro rata provision prevents the Board from attempting to obtain from an ELIC GIC the total withdrawal value of a participant's account, particularly if the ELIC GIC's interest rate were below that of other unmatured GICs in which the Board had invested.

> Thus, *if a Plan participant dies, retires, or suffers severe financial hardship due to illness,* ELIC could be called upon under its unmatured GICs to pay to the Board, in cash, ELIC's pro rata share of that participant's account in the Plan. Further, if the participant retires, becomes seriously ill, or dies, and the participant or the participant's beneficiary elects an annuity, the Board could direct ELIC to issue that annuity upon payment of the appropriate premium and ELIC would be contractually obligated to comply.

642 A.2d at 860 (emphasis added). If it were true that the GIC contract "*require[d] all withdrawals to be made on a pro rata basis,*" it would not then follow that "ELIC *could* be called upon ... to pay ... ELIC's pro rata share...." This analysis applies equally to the ELIC GICs at issue here.

Our dissenting Justice correctly states that GICs in and of themselves are not life-contingent. We have concluded, however, that the ELIC GICs cannot be examined in a vacuum. Rather, the GICs are part of the Plan and are wholly governed by the Plan's section 7.3 requirements that provide for a payment upon a member's death. These requirements, by their express terms, create a life-contingent payment defined as an "annuity" under A.R.S. § 20–254.01.

The language of ELIC's GICs establishes GICs' role within the larger Plan by expressly stating that "[t]he Owner [Trustee] may also withdraw all or part of the fund value to provide for Plan benefits, *in accordance with the Plan's provisions.*" The GICs' following paragraph also references the GICs' role within the Plan declaring, "[t]he Owner may withdraw amounts from the fund value required to comply with participant reallocations among other investment options available *under the Plan.* Withdrawals for participant elections may be made only as frequently as participants are permitted to elect investment changes *under the Plan.*" Group Limited Premium Deposit Pension Contract, ELIC Contract Number CG01291A3A, issued April 4, 1988 (emphasis added). The language of the GICs acknowledges that they exist as an integral part of a larger package of investment options offered to Honeywell employees. Segregation from other investment options in the Plan for individual examination cannot occur, for as the dissent declares, "They are all held by the Plan."

■ We therefore interpret the GICs as incorporating the Plan, subject to all the Plan's provisions. The referencing language establishes that the Honeywell GICs were issued by ELIC pursuant to the Plan, tailored to its bidding specifications, and thus cannot be interpreted independently of the Plan for which they were created.[5]

The court of appeals distinguished *Board of Trustees,* pointing out that in contrast to the facts here, in *Board of Trustees* there was evidence of administrative treatment of GICs as covered annuities, that the Legislature had acquiesced to such legislative treatment, and that the Maryland Legislature had rejected four bills that would have removed GICs from coverage under that state's guaranty fund. 642 A.2d at 863–65. We recognize that these additional facts in *Board of Trustees* firmly support the Maryland court's conclusion. However, we do not find the absence of similar facts here dispositive of the issue. Instead, we are persuaded that the ELIC GICs fall squarely within the A.R.S. § 20–254.01 definition of annuity because the continuation and amount of periodic payments by ELIC of both principal and interest depended upon the lives of Plan participants. ELIC contracted to pay a specified interest rate on the principal invested in the GIC. If a participant were to die and his or her pro rata share of the ELIC GICs were withdrawn, payments to the Trustee from the GIC contract for the benefit of that participant would obviously cease.

We also find the Fund's argument overstates the case when it concludes that to adopt Honeywell's interpretation of A.R.S. § 20–254.01 would qualify all 401(k) plans as annuities. It is true that the Internal Revenue Code requires distribution of accounts in retirement plans upon death, among other events. 26 I.R.C. § 401(a)(1994). The Plan is a profit-sharing plan qualified under section 401(k) of the I.R.C. As noted, however, the contract between ELIC and the Plan also requires payment upon death. Moreover, in defining the scope of Fund coverage, A.R.S. § 20–682(A) limits Guaranty Act coverage to policies and contracts issued by insurance companies. Thus, not all 401(k) retirement plans would be annuities, but only those involving policies and contracts issued by insurance companies. Accordingly, while we recognize similarities among GICs and bonds, mutual funds, and bank certificates of deposit, such similarities do not affect our

5. The Plan's bidding specifications submitted to ELIC state that "[t]he [GIC] contract must provide for full book value disbursement rights for plan benefits in accordance with the procedure described above. 'Plan Benefits' include disbursements upon retirement, *death,* disability, or termination of employment...." Honeywell Investment Plus Plan—Honeywell Retirement Savings Plan, GIC Bidding Specifications, "Investment Structure" at 2 (emphasis added).

analysis of whether GICs fall under the scope of Article 7.

Appellant also declares that the life-contingent nature of the I.R.C. § 401(a) requirement would qualify all assets held by the Plan for coverage as annuities. While appellant complains that the legislature could not have intended the section 20–254.01 definition to cover such a wide range of agreements, neither the plain language of the statute nor its legislative history supports this assertion. The legislature could have specifically exempted certain agreements from the definition or otherwise have narrowed its scope. In fact, in 1995 the legislature did prospectively exclude GICs from Fund coverage. *See* A.R.S. § 20–682(B)(4).[6] However, under the statutory definition of annuity applicable here, ELIC GICs are annuities because the "making or continuance of all or some" payments or "amount of any payment" due under these contracts is life-contingent.

■ We turn now to Honeywell's argument that because the GICs allow the Trustee to purchase an annuity for employees upon retirement, GICs qualify as annuities under section 20–254.01. The GIC provides participants the option to direct the Trustee to withdraw the participants' annuity value and to purchase an "individual retirement annuity contract." The participant would own the annuity contract, which provided for a number of benefit payment options, including a life annuity, a period certain and life annuity, and a joint and survivor annuity. The court of appeals characterized this option as "entirely speculative." 187 Ariz. at 154, 927 P.2d at 814. The court observed that for this annuity contract option to take effect, the participant must first have retired, selected the annuity contract from among the Plan's available options, and directed the

Trustee to pay for the annuity specifically from the fund value of the GICs. In contrast, Honeywell asserts that because the GIC makes available the option to purchase an annuity contract upon retirement, it is an "agreement to make periodic payments . . . where the making or continuance of all or of some of a series of payments . . . is dependent upon the continuance of human life." Even though this option was merely elective, Honeywell argues that this is no bar to fund coverage. Honeywell points to the *Board of Trustees* opinion in support:

> It would be no defense for ELIC to prove that neither it, nor the [trustee], anticipated when the GIC was issued that the annuity option would ever be exercised. The annuity option is a provision of the GIC. Whether the option is exercised, or anticipated to be exercised, is immaterial to the validity of the GIC and its compliance with [Maryland's statutory definition of an annuity].

642 A.2d at 868.

On this point we agree with the court of appeals. Even though the GIC allows the Trustee to purchase an annuity contract upon the participant's retirement, we find this alone cannot qualify the GIC contract as an annuity under section 20–254.01. Instead, we conclude that the GICs are annuities for Article 7 purposes only because required payments under the contracts are life-contingent.

### B. Decisions of other states

After examining the holdings of other state courts that have addressed whether GICs are properly treated as annuities, we find no reason to alter our conclusion that under Arizona law ELIC GICs are annuity con-

---

**6.** We concur with the court of appeals' conclusion that:

> We cannot interpret the recent legislation as revealing the Legislature's intent regarding applicability of the guarantee fund to the GIC's involved here. On the one hand, the recent legislation may be viewed as merely clarifying existing law. If that were the case, then we could hold that the Legislature had always intended that GIC's not be covered under the guaranty fund. On the other hand, the recent legislation may be viewed as a substantive change in existing law.

> If so, we could hold that prior law required that GIC's be covered, but that the Legislature made a substantive change in the law to eliminate coverage in future cases.

> Nothing in the recent legislation or its history reveals whether [the amendment] was a clarification or a substantive change. Indeed, by providing that the legislation does not apply to pending litigation, the Legislature indicated that the courts are to analyze the prior statute without reference to the recent legislation.

187 Ariz. at 151 n. 10, 927 P.2d at 811 n. 10.

tracts eligible for Fund coverage. For example, in *Minnesota Life & Health Insurance Guaranty Ass'n v. Department of Commerce*, 400 N.W.2d 769 (Minn.App.1987), the court found GICs to be annuity contracts under Minnesota's statutory definition. However, *Minnesota Life* offers minimal guidance here because Minnesota's statutory definition of an annuity contract varies in important respects from Arizona's.[7] Also, in finding the GICs to be annuity contracts, the court relied heavily on the statutory construction of administrators charged with enforcing the statute, a factor not relevant to our analysis.

In *Unisys Corp. v. Pennsylvania Life & Health Insurance Guaranty Ass'n*, 667 A.2d 1199 (Pa.Commw.Ct.1995), the court found ELIC GICs eligible for coverage under the Pennsylvania Life and Health Insurance Guaranty Association Act. The Act did not define the term "annuity." Therefore, the court relied on definitions in Pennsylvania case law, *Black's Law Dictionary*, and in the Maryland Code discussed in *Board of Trustees*. Relying on the *Board of Trustees* analysis, the *Unisys* court concluded that ELIC GICs were "annuity contracts" for the following reasons,: (1) the contracts were titled "Group Annuity Contract"; (2) the contracts defined the term "annuitant" as "[t]he individual upon whose life the amount and duration of benefits depends"; (3) similar to the contracts in *Board of Trustees*, the contracts allowed the trustee to withdraw the annuity value and to purchase an annuity for a plan participant; (4) the participant's right under the contract includes her right to the principal fund; and (5) participants had the con-

tractual right to choose from three types of annuity payments.[8] We note that these circumstances are largely replicated in the facts of the instant case.

In contrast, in *Bennet v. Virginia Life, Accident & Sickness Insurance Guaranty Ass'n*, 251 Va. 382, 468 S.E.2d 910 (1996), the Virginia Supreme Court found dispositive that Virginia's insurance guaranty association's coverage did not extend to "[a]ny contract or certificate which is not issued to and owned by an individual, except to the extent of ... any annuity benefits guaranteed to an individual by an insurer under such contract or certificate." 468 S.E.2d at 912 (quoting Code of Virginia § 38.2–1700(C)(5)). The court denied coverage to GICs on the basis that "nothing in the statutory language permits an interpretation that a mere beneficial or equitable owner can satisfy the 'issued to' and the 'owned by' requirements.... The GICs were issued to the Plan, not the individual participants...." *Id.* at 913. In distinguishing *Board of Trustees*, the court noted that at the time of the Maryland Court of Appeals' decision, the Maryland Code did not exclude contracts not issued to and owned by an individual. Similarly, in *Oklahoma Life & Health Insurance Guaranty Ass'n v. Hilti Retirement Savings Plan*, 939 P.2d 1110 (Okla.1997), the Oklahoma Supreme Court found that statutes governing Oklahoma's life and health insurance guaranty association[9] expressly excluded unallocated annuity contracts such as the GICs. The relevant Oklahoma statute was essentially identical to the Virginia statute in *Bennet*. In contrast, Ari-

---

7. Minnesota's definition of "annuity contracts" was provided in Minn.Stat. § 61B.03, subd. 3 (1984): " 'Annuity contracts' means contracts subject to Chapter 61A wherein the policyowner agrees to make payments to the insurer at the beginning of the contract period and the insurer agrees to make payments thereafter to the insured for a specified period of time or until the insured's death." 400 N.W.2d at 771.

8. The three types of annuity benefit payments available under the GIC included:

1. *Life Annuity.* Payments made as long as the annuitant is living.
2. *Period Certain and Life.* Payments made for a period elected by the trustee. If the annuitant is alive at the end of this period certain,

payments will be made until the annuitant dies. If the annuitant dies during the period certain, payments will be made to the annuitant's beneficiary until the period expires.
3. *Joint and Survivor Annuity.* Payments will be made while either annuitant is living. Payments made to the joint annuitant after the death of the annuitant may remain the same or may be reduced by one-half or one-third.

9. Oklahoma Statutes title 36, § 2025(B)(2)(g) states that the act does "not provide coverage for ... any annuity contract or group annuity certificate which is not issued to and owned by, an individual, except to the extent of any annuity benefits guaranteed to an individual by an insurer under such contract or certificate...." 939 P.2d at 1112.

zona statutes do not provide for exclusion of contracts not issued to and owned by an individual. Thus, the facts and holdings of *Bennet* and *Oklahoma Life* are readily distinguishable.

In a decision subject to further appellate review, the Texas Court of Appeals found that under Texas' guaranty act, ELIC GICs were, in fact, unallocated annuity contracts under Texas law. *Unisys Corp. v. Texas Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n,* 943 S.W.2d 133 (Tex.App.1997). The Texas insurance guaranty act defined an unallocated annuity contract as "any annuity contract or group annuity certificate that is not issued to an individual person including guaranteed interest contracts ..., except to the extent any annuity benefits under that contract or certificate are guaranteed to an individual person by an insurer." *Id.* at 137. However, the court concluded that the contracts were barred from coverage under the act's specific provisions excluding nonresident owners of unallocated annuity contracts. Finding the trustee of the GICs to be a nonresident contract holder, the court concluded that the GICs were not covered by the act. Our statutes do not dictate a similar result.

The New Mexico Court of Appeals recently addressed the issue of guaranty fund coverage for ELIC GIC losses. *Krahling v. First Trust Nat'l Ass'n,* 123 N.M. 685, 944 P.2d 914 (App.1997). The court concluded that the most applicable cases in deciding the issue of coverage were *Board of Trustees* and our court of appeals decision in this case. The New Mexico court found no particular fault with the *Board of Trustees* analysis, but nevertheless concluded that the Arizona court's opinion provided a better rationale in light of New Mexico's statutes and administrative history. We disagree with the New Mexico Court of Appeals' analysis on the same basis that we disagree with the Arizona Court of Appeals' reasoning.

We observe that where state courts have found insurance guaranty fund coverage for ELIC's and other companies' GICs, it has been, at least in part, because the courts concluded that the GICs fit within a particular state's statutory definition of annuities or annuity contracts. *See Minnesota Life,* 400 N.W.2d at 769; *Board of Trustees,* 642 A.2d at 856; *Unisys* 667 A.2d at 1199 (Pa. Commw.). Conversely, where courts have concluded that fund coverage did not extend to GICs, it has been primarily because the courts interpreted statutory language defining fund coverage to exclude GICs. *See Bennet,* 468 S.E.2d at 910; *Oklahoma Life,* 939 P.2d at 1110; *Unisys,* 943 S.W.2d at 133 (Tex.App.). We find here that applicable Arizona law required Fund coverage of the ELIC GICs.

The Arizona Court of Appeals distinguished the present case from *Minnesota Life* and *Unisys* (Pa.Commw.) in part on the basis that the two decisions relied on state administrative interpretations supporting coverage of the GICs. However, as the court of appeals pointed out, the present case does not involve agency interpretation of the guaranty fund statutes. We believe that a favorable administrative interpretation could support Honeywell's argument, but conclude that the absence of such an interpretation does not, alone, undermine it. Thus, we rest our decision on the plain meaning of section 20–254.01, which we decide requires Fund coverage of ELIC GICs.

## C. Cross petitions for review

The Fund has cross-petitioned for review on two additional issues decided by the court of appeals: (1) whether GICs are "direct" contracts as required by A.R.S. § 20–682(A); and (2) whether the ELIC GICs were issued to Arizona residents as required by A.R.S. § 20–682(A).

### 1. GICs are direct contracts under A.R.S. § 20–682(A)

■ The Fund argues that section 20–682(A) limits Article 7 coverage to "direct life insurance policies, disability insurance policies, annuity contracts and contracts supplemental to life and disability insurance policies and annuity contracts," and that Honeywell cannot show a direct contractual relationship between the Plan participants and ELIC. Because the GICs were issued to a trustee, and not directly to the participants, the Fund concludes that the legislature did not intend

that Fund coverage extend to such contracts. This argument is refuted by case law as well as by the legislature's purpose in establishing the Fund.

■ Initially, we question whether the word "direct" in section 20–682(A) is meant to modify each of the string of policy types listed in the section. However, even if Article 7 were to apply only to "direct" annuity contracts, we find that the GICs were "direct." We approve the court of appeals' conclusion that "[b]ecause the [participants] were beneficiaries of the trust and had equitable ownership of the GIC's, the relationship between ELIC and the [participants] was direct." 187 Ariz. at 151, 927 P.2d at 811. Honeywell argues that the "direct" insurance requirement in section 20–682(A) was meant to exclude fund coverage for reinsurance contracts under which one insurance company indemnifies another. We agree that the legislature inserted the term "direct" to bar coverage for reinsurance contracts. The Florida District Court of Appeals reached a similar conclusion in *Zinke–Smith, Inc. v. Florida Insurance Guaranty Ass'n,* stating that " 'direct insurance' as used in the [Florida Insurance Guaranty Association Act] refers to an insurance contract between the insured and the insurer which has accepted the risk of a designated loss to such insured, *which relationship is direct and uninterrupted by the presence of another insurer.*" 304 So.2d 507, 508 (Fla.App.1974) (emphasis added). *See also Levi Strauss & Co. v. New Mexico Property & Cas. Ins. Guar. Ass'n,* 112 N.M. 433, 816 P.2d 502 (1991); *Iowa Contractors Workers' Compensation Group v. Iowa Ins. Guar. Ass'n,* 437 N.W.2d 909, 914 (Iowa 1989).

We further find that recognizing GICs as direct contracts is consistent with the intent of our legislature in enacting Article 7. While almost no legislative record remains concerning the enactment of the Arizona Life and Disability Insurance Guaranty Fund Act, the record supplies relevant testimony before the senate oversight committee when the Act was approved. An employee of the State Insurance Department testified that the proposed bill would apply to "life and disability insurance as the result of insolvencies" and that the "primary thrust of the bill is to protect the policy holder and not the insurance company." *Hearing on S.B.· 1237 Before the Senate Comm. on Agriculture, Commerce and Labor,* 33d Legis., 1st Reg. Sess. 11 (Ariz.1977). Another witness expressly testified that the proposed bill would not cover reinsurance. *Id.* This evidence supports the conclusion that the Legislature intended the Act to protect individual plan participants. To adopt the interpretation urged by the Fund would lead to a perverse result, where pension plan participants would bear the very losses of insolvency the Act was established to prevent. We hold that the Legislature could not have intended this result.

**2. The ELIC GICs were issued to Arizona residents as required under A.R.S. § 20–682(A)**

■ Section 20–682(A) applies to contracts "issued to residents of this state by persons authorized to transact insurance in this state...." The Fund asks us to find that because the ELIC GICs were issued to a non-resident trustee, and not directly to individual Arizona resident plan participants, the contracts were thus excluded from Fund coverage. Reason and our understanding of the public policy underpinning the guaranty fund argue against the Fund's position. Instead, we approve the court of appeals' reasoning that the Arizona resident plan participants were the equitable owners of the GICs and that for the purposes of Arizona's guaranty act, the GICs were "issued to" such equitable owners.

We agree with the court of appeals' conclusion that the Fund's interpretation of the statute would lead to unreasonable consequences contrary to the purposes behind the guaranty act. As the court suggested,

[i]t would be possible under the Fund's construction for employees who are residents of other states to invoke the protection of Arizona's fund merely because an Arizona resident was trustee of their retirement plan. That would expose the Fund to coverage of benefits owed to unknown numbers .of non-Arizonans, based merely on the selection of an Arizonan as

trustee. On the other hand, the Fund's interpretation would deny coverage to Arizona employees merely because their trustee was not a resident of this State. 187 Ariz. at 150, 927 P.2d at 810. The purpose of Arizona's guaranty act was to protect individual participants of annuity contracts, among others, from insurance company insolvency. The Fund's argument seems to us patently and unnecessarily contrary to this policy.

## Disposition

The ELIC GICs are annuity contracts as defined under Title 20 and therefore eligible for Fund coverage. We vacate that part of the court of appeals opinion holding that the ELIC GICs are not annuity contracts, affirm that part of the opinion holding that the GICs are direct contracts issued to Arizona residents, and affirm the trial court's entry of summary judgment for Honeywell and First Trust National Association.

ZLAKET, C.J., and FELDMAN and MOELLER, JJ., concur.

MARTONE, Justice, dissenting.

The GICs themselves are not life contingent. There is nothing in the GIC document that makes them life contingent, and nowhere does the majority suggest otherwise. The majority looks to the Plan instead. The Plan, of course, holds more than GICs. It holds certificates of deposit, stocks, bonds, and other investments. Nothing in any of those instruments makes them any more or less life contingent than anything in the GIC document. They are all held by the Plan. The Honeywell Plan requires a payout on death. Thus, under the court's reasoning, holdings in the Plan other than GICs, including certificates of deposit and securities, are also life contingent because of the Plan. They too would be annuities. The court's answer to this problem is that because coverage under A.R.S. § 20–682(A) is limited to contracts issued by insurance companies, "not all 401(k) retirement plans would be annuities, but only those involving policies and contracts issued by insurance companies." *Ante*, at 91, 945 P.2d at 812. But this simply does not follow. That there would be no coverage because they are not issued by insurance companies does not mean that they are not annuities. They would simply be uncovered annuities. But under the court's reasoning, as long as the contract is issued by an insurance company, it is a covered annuity. Thus, when an insurance company issues a debt instrument like a bond, and it is held by the Plan, it becomes an annuity because the Plan makes it life contingent. There would be coverage under the Guarantee Act.

In deciding whether GICs are annuities, I would look at the GICs alone without reference to the employer's Plan. There is nothing in the GIC which makes it life contingent. To reach the conclusion that GICs are annuity contracts, the majority relies upon the Plan, not the GIC. Even if, as the court says, it is true that the Plan requires withdrawals from GICs upon the death of a participant, this still does not make the GIC itself contingent on life. The same GIC could be held by an employer plan that did not require withdrawal at death. But its status as an annuity cannot depend on who buys it.

As the majority notes, however, the legislature has now made it quite clear that GICs are excluded from coverage under the Guarantee Act. A.R.S. § 20–682(B)(4)(Supp.1996). Thus there is no coverage for GICs even though today's decision characterizes them as annuity contracts within the meaning of § 20–682(A). But today's decision broadens the definition of annuity to include any investment held by the Plan and issued by an insurance company, and therefore the legislature may wish to revisit the statute to see whether its exclusion of GIC coverage is adequate to achieve its purpose.

I respectfully dissent.