**MISSOURI LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION, Respondent,**

v.

**CAMERON MUTUAL INSURANCE COMPANY, Farm Bureau Town And Country Insurance Company Of Missouri, Missouri Professional Liability Insurance Association, Providers Insurance Company, James A. And Jeanne E. Levelle, Equity Mutual Insurance Company, Cox Medical Center, National Aviation Underwriters, Executive Beechcraft, Inc., Shelter Mutual Insurance Company, Columbia Mutual Insurance Company, Anheuser–busch, Inc., Union Electric Company, Chuck Quackenbush, Medical Defense Associates, Sbu, Inc., Jefferson Smurfit Corporation, St. Louis Board Of Police Commissioners, Appellants.**

Nos. WD 54611, WD 54615, WD 54616, WD 54622 to WD 54625, WD 54704 and WD 54694.

Missouri Court of Appeals, Western District.

Oct. 6, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 24, 1998.

Application for Transfer Sustained Jan. 19, 1999.

Case Retransferred June 1, 1999.

Court of Appeals Opinion Readopted June 15, 1999.

Dana Frese, Jefferson City, for Cameron Mutual Insurance Company, Farm Bureau Town and Country Insurance Company of Missouri, Missouri Professional Liability Insurance Association, Providers Insurance Company, James A. and Jeanne E. Levelle.

Douglas Schmidt, Kansas City, for Equity Mutual Insurance Company, Cox Medical Center, National Aviation Underwriters.

Martin Matthew Montemore, Kansas City, for Executive Beechcraft, Inc., Shelter Mutual Insurance Company, Columbia Mutual Insurance Company.

Renana Abrams, Kansas City, for Anheuser-Busch, Inc., Union Electric Company.

Thomas Hamill, Overland Park, KS, for Chuck Quackenbush.

Gail Fredrick, Springfield, for Medical Defense Associates.

Michael Henry Musich, St. Louis, for SBU, Inc.

Scott Bjorseth, Alton, IL, for Jefferson Smurfit Corporation.

Michael Garvin, St. Louis, for St. Louis Board of Police Commissioners.

Michael Wayne Rhodes, Kansas City, for Missouri Life and Health Insurance Guaranty Association.

SPINDEN, Judge.

In this declaratory judgment action, the circuit court declared in a summary judgment that the Missouri Life and Health Insurance Guaranty Association was not obligated to cover annuities issued by the insolvent Executive Life Insurance Corporation. The circuit court declared that covered "annuities," as defined by § 376.718(2),[1] did not include those issued by Executive Life because they were not "issued to and owned by an individual," as

---

1. All citations of statutes refer to the 1994 Revised Statutes.

required by the statute. We reverse the circuit court's summary judgment.

In December 1991, California courts ordered the liquidation of Executive Life. On January 19, 1996, the Jackson County Circuit Court, in response to a motion by the Missouri Guaranty Association, appointed Chuck Quackenbush, California's insurance commissioner, to represent persons who benefited from annuities issued by Executive Life, including 58 persons in Missouri. Quackenbush asked Missouri's Guaranty Association to continue paying the annuities' obligations, but the association refused on the ground that the annuities were not insurance contracts included by the General Assembly in the provisions of §§ 376.715 to 376.758.

The Guaranty Association sued for the circuit court's declaration that it had correctly interpreted statutes setting out its obligations. The circuit court concurred with the Guaranty Association's interpretation of § 376.718(2) which says, "As used in sections 376.715 to 376.758, the [term 'annuity' or 'annuity contract'] shall mean ... any annuity contract or group annuity certificate which is issued to and owned by an individual." The circuit court concluded that, because Executive Life did not issue any of the annuities involved in this case to individuals and none were owned by individuals, § 376.718(2) precluded application of §§ 376.715 to 376.758 to them. The circuit court erred in its interpretation.

The General Assembly mandated, in § 376.758.2, that §§ 376.715 to 376.758 be construed "liberally ... to effect the purpose under subsection 2 of section 376.715 which shall constitute an aid and guide to interpretation." The General Assembly declared, in § 376.715.2, that the purpose of §§ 376.715 to 376.758 was "to protect, subject to certain limitations, the persons specified in [§ 376.717.1] against failure in the performance of contractual obligations, under life and health insurance policies and annuity contracts specified in

[§ 376.717.2] because of the impairment or insolvency of the member insurer that issued the policies or contracts."

The General Assembly said that the persons it wanted to protect were "owners of or certificate holders under [policies or contracts specified in § 376.717] and who ... are residents of this state[.]" Section 376.717.1(2). It said, in § 376.717.1(1), that it also wanted to protect "persons who, regardless of where they reside, except for nonresident certificate holders under group policies or contracts, are the beneficiaries, assignees or payees of the persons covered under [§ 376.717.1(2)]." It defined "person" as "any individual, corporation, partnership, association or voluntary organization[.]" Section 376.718(11).

The contracts which the General Assembly specified in § 376.717 that it wanted to cover included those entered into with "persons specified in [§ 376.717.1] for direct, nongroup life, health, *annuity* and supplemental policies or contracts, certificates under direct group policies and contracts, except as limited by the provisions of sections 376.715 to 376.758."[2] The legislature excluded contracts not guaranteed by the insurer or which allocated risk to the contract holder, reinsurance, agreements exceeding a particular interest rate, self-funded or uninsured plans or programs, contracts paying service or administration fees, and policies issued by an insurer not authorized to issue a policy in Missouri. Section 376.717.3.

■ The Guaranty Association contends that, because Executive Life's annuities were purchased by companies which retained ownership of them, the General Assembly did not intend to include them even though the companies purchased them for the sole benefit of individuals. We reject this argument as inconsistent with a liberal construction of §§ 376.715 to 376.758.

The General Assembly's definition of annuity in § 376.718(2) is more of a limitation than it is a definition. Typically, an annuity is a contract to make periodic payments

2. We added the emphasis.

to a person so long as that person lives in exchange for a single, lump-sum investment. *In re Nelson,* 926 S.W.2d 707, 711 (Mo.App.1996). The General Assembly's "definition," however, was not a general description of annuities. Its definition was a limitation of the application of "annuity" to annuities which were "issued to and owned by an individual." It went on to emphasize that "[t]his definition ... does not include any form of unallocated annuity contract[.]" In defining an "unallocated annuity contract" in § 376.718(15), the General Assembly excluded "any annuity contract or group annuity certificate which is not issued to and owned by an individual, *except to the extent of any annuity guaranteed to an individual by an insurer under such contract or certificate.*" [3]

Heeding the General Assembly's mandate that the provisions of §§ 376.715 to 376.758 be construed liberally to effectuate the purpose of protecting persons (including corporations), we conclude from reading §§ 376.718(2) and 376.718(15) in tandem that the General Assembly intended to exclude annuities which were not issued to, and owned by, an individual, but only if the annuities did not guarantee an amount to a particular individual. The annuities in this case, though not owned by an individual, did guarantee an amount to a particular individual.

The annuities were single premium, allocated annuities purchased in fulfillment of agreements to settle tort claims. The purchasing companies retained ownership of the annuities for the tax benefit of the annuitants and payees, but only the specified annuitants and payees benefited from the periodic payment of the annuities. The purchasers and owners did not receive any payments, and they did not have the power to change a beneficiary or payee unless directed to do so by the annuitants and payees. Hence, even though they were not issued to and owned by an individual, they fell within the exception of § 376.718(15) because they were guaranteed to an individual.

We distinguish these annuities from a common form of unallocated annuity contracts, guaranteed investment contracts. Typically, guaranteed investment contracts provide that a trustee will invest funds, frequently for a pension plan, in an annuity which does not allocate its proceeds to any particular individual but guarantees a rate of return on the investment of funds. The trustee, as owner, is the only person who controls the annuity. If a member of a group participating in the investment of the funds asks for a change in allocation of the investment, the trustee has the discretion to grant or to deny the request. *See Arizona Life and Disability Insurance Guaranty Fund v. Honeywell, Inc.,* 190 Ariz. 84, 945 P.2d 805 (1997).

Because the annuities at issue in this case were allocated to benefit specific individuals, the circuit court erred in declaring that the Guaranty Association was not obligated under §§ 376.715 to 376.758 to provide coverage for these annuities. We reverse the circuit court's summary judgment and remand for further proceedings.

HOWARD, P.J., and BRECKENRIDGE, J., concur.