Present:  Carrico, C.J., Compton, Stephenson, Lacy, Keenan, and Koontz, JJ., and Cochran, Retired Justice

DAVID H. BENNET, ET AL.

OPINION BY
v.  Record No. 950808     CHIEF JUSTICE HARRY L. CARRICO
April 19, 1996

VIRGINIA LIFE, ACCIDENT AND SICKNESS
INSURANCE GUARANTY ASSOCIATION, ET AL.[*]

FROM THE STATE CORPORATION COMMISSION

This appeal involves application of the provisions of Chapter 17 of Title 38.2 of the Code of Virginia, Code §§ 38.2-1700 through -1721.  The purpose of Chapter 17 is "to protect, subject to certain limitations, policyowners, insureds, beneficiaries, annuitants, payees, and assignees of life insurance policies, accident and sickness insurance policies, annuity contracts, and supplemental contracts against failure to fulfill contractual obligations due to the impairment or insolvency of the insurers issuing those policies or contracts."  Code § 38.2-1700(A).

To provide this protection, the General Assembly designated the Virginia Life, Accident and Sickness Insurance Guaranty Association (the Association), composed of all insurers licensed to transact the business of insurance in this Commonwealth, "to enable the guaranty of payment of benefits and of continuation of coverages."  Code §§ 38.2-1700(A), -1702(A).  Members of the Association are "subject to assessments to provide funds to carry out the purpose of [Chapter 17]."  Code § 38.2-1700(A).  In the case of an insolvent insurer, the Association shall "[g]uarantee, assume, or reinsure or cause to be guaranteed, assumed, or

_____
[*]The State Corporation Commission is also an appellee pursuant to Rule 5:21(f).

reinsured the covered policies of the insolvent insurer," Code § 38.2-1704(B)(1), and shall "[a]ssure payment of the contractual obligations of the insolvent insurer," Code § 38.2-1704(B)(2).

However, not all such policies or contracts are entitled to protection. As pertinent here, Code § 38.2-1700(C)(5) provides that Chapter 17 shall not apply to "[a]ny contract or certificate which is not issued to and owned by an individual, except to the extent of . . . any annuity benefits guaranteed to an individual by an insurer under such contract or certificate." This provision is at the core of the controversy in the present case, and it was brought into focus when, on December 22, 1994, David H. Bennet and L. John Fleischmann, Trustees for the Dynamic Systems, Inc. Savings Enhancement Plan (the Plan), and Roger Nicholas, a participant in the Plan (collectively, the Plan Trustees), filed a petition for declaratory relief with the State Corporation Commission (the Commission).

The petition alleged that Dynamic Systems, Inc. (Dynamic) is a firm engaged in the business of providing engineering and management services; that Dynamic maintains the Plan for the benefit of its employees, who number "94 or more"; and that the Plan and the trust implementing it qualify under § 401(a) of the Internal Revenue Code and include a qualified cash or deferment arrangement under § 401(k). The petition alleged further that the Plan had purchased certain Guaranteed Interest Contracts (GICs) from InterAmerican Insurance Company of Illinois (InterAmerican); that InterAmerican was licensed to transact insurance business in Virginia and, consequently, was a member of the Association; and

that InterAmerican had become insolvent as that term is defined in Code § 38.2-1701.  Finally, the petition alleged that demand had been made upon the Association to extend coverage to the GICs but that the Association had refused the demand and the Commissioner of Insurance for Virginia had ruled that the GICs were not covered by Chapter 17 of Title 38.2.

The petition prayed for a declaration that the GICs were "annuity contracts" entitled to coverage under Code § 38.2-1700(A) and that the Association was required to guarantee the contracts. The petition also prayed for an order requiring the Association to pay the Plan Trustees approximately $1.6 million, representing the "Contract Value [of the GICs] as of 12/23/91," the date InterAmerican became insolvent.

The Association moved to dismiss the petition on the ground that the GICs were excluded from coverage by the terms of Code § 38.2-1700(C)(5).  The Commission sustained the Association's motion and dismissed the petition, stating:

> From the documents filed by the parties, including the actual text of the GICs themselves, it is obvious that these products are not owned by and issued to individuals, nor do they provide any annuity benefits to individuals.  Thus, there is no basis under which these investments can be guaranteed by [the Association].

The Plan Trustees are here upon an appeal of right.  Va. Const. art. IX, § 4; Code § 12.1-39.  They argue that the statute in question is remedial in nature and, hence, should be construed liberally to promote the underlying policy of providing protection to innocent victims of insurer insolvency.  The Plan Trustees maintain that the Commission's interpretation of Code § 38.2-

1700(C)(5) is both unduly restrictive and inconsistent with the spirit and fundamental purposes of the statute in question.

The Plan Trustees argue further that, although the Plan and the trustees hold legal title to the GICs, the Plan participants "are in every sense the equitable and beneficial owners of the . . . GICs." These investments, the Plan Trustees say, "were purchased by the Plan at the express direction of individual Plan participants using individually identifiable participant contributions to pay the premiums," the interest of each participant "was separately accounted for, and individual Plan participants received periodic statements identifying their specific interests in the . . . GICs." Furthermore, the Plan Trustees point out, each participant "directed the application of funds" and had "individual rights to withdraw money under the GICs in accordance with the terms of the Plan."

We will assume, without deciding, that the Plan Trustees are correct in saying the statute in question should be liberally construed. Even so, we do not think the statute can be stretched to provide coverage for the claims advanced by the Plan Trustees. Accordingly, we find that the Commission's interpretation of Code § 38.2-1700(C)(5) is neither unduly restrictive nor inconsistent with the spirit and fundamental purposes of the statute in question.

Code § 38.2-1700(C)(5) excludes from coverage any contract or certificate which is not both _issued to_ and _owned by_ an individual, and nothing in the statutory language permits an interpretation that a mere beneficial or equitable owner can

satisfy the "issued to" and the "owned by" requirements. Indeed, such an interpretation is impermissible even under the GICs themselves. The GICs were issued to the Plan, not the individual participants, and

§ 4.10 of the Plan provides as follows:

> 4.10 <u>Trust as Single Fund</u>: The creation of separate Accounts for accounting and bookkeeping purposes shall not restrict the Trustee in operating the Trust as a single Fund. Allocations to the Accounts of Participants in accordance with this Article IV shall not vest any right or title to any part of the assets of the Fund in such Participants . . . .

In addition, the GICs are issued to the Plan as the "Contractholder," and § 6.7 of the GICs provides as follows:

> **6.7 Ownership**
>
> The Contractholder (and not the Participant, beneficiary or contingent annuitant) is the sole owner of all payments, rights, options and privileges granted or made to any Participant, beneficiary or contingent annuitant under the provisions of this Contract and is entitled, without the consent or participation of any Participant, beneficiary or contingent annuitant, to exercise such rights, options and privileges and to receive all such payments at the time payable under the Plan to the Participant, beneficiary or contingent annuitant.

Hence, the conclusion is inescapable that the GICs involved in this case are neither issued to nor owned by individuals. The petitioners can succeed, therefore, only if the GICs guarantee "annuity benefits . . . to an individual," within the meaning of the exception to Code § 38.2-1700(C)(5). In a footnote to their brief, the Plan Trustees state as follows:

> The . . . GICs are themselves annuity contracts because they are agreements to make periodic or lump-sum payments and fixed-dollar amounts to the Plan participants through the Plan. <u>See</u> Va. Code Ann. § 38.2-106(1993). As annuity contracts, the . . . GICs clearly guaranteed annuity benefits to the Plan participants.

As the Association points out, however, Code § 38.2-106 defines an annuity as an agreement "to make periodic payments in fixed dollar amounts pursuant to the terms of a contract for a stated period of time or for the life of the person or persons specified in the contract," and the GICs involved in this case simply do not satisfy that definition; they neither provide for periodic payments nor fix a dollar amount to be paid. Rather, the GICs provide only for the accumulation of value at a specified rate of interest and for the withdrawal of the accumulated value upon certain conditions.

Moreover, while one of the options provided by the GICs permits withdrawal of accumulated value for the purchase of an annuity, the withdrawal must be made by the Contractholder, i.e., the Plan, not an individual participant. Section 4.1 of the GICs states:

4.1 **Notice of Benefits**
Written notice shall be given to the Insurance Company by the Contractholder whenever any withdrawal is to be made from the Accumulated Value for the purpose of providing benefits under the Plan.

Furthermore, the undertaking assumed by the Contractholder according to the terms of the GICs is to purchase annuities for participants, upon request. Section 4.2 of the GICs provides:

**4.2 Withdrawal to Purchase an Income Annuity**
Upon receipt of a notice from the Contractholder to purchase an annuity under this Contract for a person in accordance with the Plan, the Insurance Company will effect the purchase of such annuity by withdrawing from the Accumulated Value the full consideration therefor, plus the amount of state premium tax, if any . . . .

An undertaking to purchase an annuity in the future is not a

present guarantee of annuity benefits. Hence, the conclusion is inescapable that the GICs involved in this case do not guarantee "any annuity benefits . . . to an individual," within the contemplation of the exception to Code § 38.2-1700(C)(5).

Board of Trustees v. Life & Health Insurance Guaranty Corp., 642 A.2d 856 (Md. 1994), cited by the Plan Trustees, is inapposite. At the time of that decision, the Maryland guaranty statute had no exclusion similar to Virginia's Code § 38.2-1700(C)(5). And we are not persuaded by the opinions of the insurance commissioners of three sister states, cited by the Plan Trustees in support of their position.

Two subsidiary questions remain, (1) whether the Commission erred in refusing to consider "certain binding representations [InterAmerican made] to the Plan participants regarding the GICs in promotional materials," and (2) whether the Commission erred in dismissing the petition for declaratory relief filed by the Plan Trustees without leave to amend. We refuse to consider these questions. No objection was preserved before the Commission with respect to either point and no assignment of error touches either point. Rule 5:21(i).

Finding no error in the proceedings below, we will affirm the judgment of the Commission.

Affirmed.