1997-NMCA-082

944 P.2d 914

Chris KRAHLING, Superintendent of Insurance, State of New Mexico, Plaintiff,

v.

FIRST TRUST NATIONAL ASSOCIATION; Honeywell, Inc.; and Honeywell Pension and Retirement Committee, Third-party Defendants/Appellants,

v.

The NEW MEXICO LIFE INSURANCE GUARANTY ASSOCIATION, Defendant/Third-party Plaintiff/Appellee.

No. 17741.

Court of Appeals of New Mexico.

July 7, 1997.

Certiorari Denied Aug. 15, 1997.

David L. Hashmall, Karen R. Cole, Popham, Haik, Schnobrich & Kaufman, Ltd. Minneapolis, MN, Paul Bardacke and John Baugh Eaves, Bardacke & Baugh, P.A. Albuquerque, for Appellants Honeywell, Inc.; the Honeywell Pension and Retirement Committee; and First Trust National Association.

Victor R. Marshall and Cindi L. Pearlman Victor R. Marshall & Associates, P.C., Albuquerque, for Appellee New Mexico Life Insurance Guaranty Association.

## OPINION

PICKARD, Judge.

1. This case involves the Life and Health Insurance Guaranty Fund, created pursuant to NMSA 1978, Sections 59A–42–1 to (Repl. Pamp.1995) (the Guaranty Law) and funded by insurers doing business in the state for the purpose of paying benefits to New Mexico residents when one of its member insurers becomes insolvent. As applicable to this case, the Guaranty Law covers "direct ... annuity contracts and contracts supplemental to ... annuity contracts, issued or assumed by an authorized insurer[.]" Section 59A–42–3(A).

2. Honeywell invested part of the deferred compensation of more than 2,250 of its New Mexico employees in guaranteed investment contracts (GICs or the contracts) purchased from Executive Life Insurance Company (Executive Life). After Executive Life

became insolvent in 1991, the New Mexico participants sought coverage from the New Mexico Guaranty Association (the Guaranty Association), which denied coverage.

3. The Guaranty Law provides that, "If a member insurer is insolvent, the association, with respect to ... covered policies of residents issued by foreign ... insurers, shall ... guarantee ... all the covered policies of the insolvent insurer[.]" Section 59A–42–7(A)(1). " '[R]esident' means any person who resides in this state ... and to whom contractual obligations are owed." Section 59A–42–4(I).

4. The specific issues in this case are whether the GICs come within the definition of annuity contracts and whether contractual obligations are owed to the trustee of the Honeywell retirement plan, who owns the GICs and who is a Minnesota resident, or to the New Mexico resident employees. On summary judgment, the district court ruled that the GICs were not annuities within the definition of NMSA 1978, Section 59A–20–2 (Repl.Pamp.1995), and that the obligations were not owed to New Mexico residents. On these issues of first impression, we conclude that the GICs were not annuity contracts meriting coverage under our statutory definition of annuities. We affirm the district court's decision to that effect, and therefore we do not address the court's alternative ground for denying coverage.

*FACTS/BACKGROUND*

5. Executive Life was an insurance company domiciled in California. The parties agree that Executive Life was insolvent in 1991 and was placed in conservatorship. Honeywell is a Delaware corporation, which has plants and employees in New Mexico, but whose headquarters and principal place of business are in Minnesota. Honeywell sponsored for its employees various savings and retirement plans that were tax-sheltered under Internal Revenue Code § 401(k). 26 I.R.C. § 401(k) (1994). Employees who participated in these plans could defer income and choose from among several investments, including a "fixed income fund." Other investment options included a diversified stock fund, a government securities fund, a Stan-

dard and Poor's 500 fund, and a fund made up of Honeywell stock.

6. The fixed income fund invested in, among other things, a portfolio of contracts issued by insurance companies. The insurance contracts in which the fixed income fund invested are called, among other names, guaranteed investment contracts (the name the parties use on appeal), group annuity contracts (the name on one of two cover sheets for the contracts), and group limited premium deposit pension contracts (the name on another cover sheet). In essence, the contracts provided that Honeywell's trustee would deposit, within a fixed number of days or months, either a fixed amount of money or not more than a stated amount of money; the money would earn a fixed rate of interest payable annually; and the fund value would be paid to the trustee in one, two, or three installments over the course of one, two, or three years, which would occur several years after the deposit was made. All of the contracts in this case were purchased in 1988 and were to be paid after 1991 when Executive Life became insolvent.

7. The Guaranty Association sought a declaration that Honeywell's contracts with Executive Life were not within the scope of the Guaranty Law. The district court granted the Guaranty Association summary judgment holding, in part, that Executive Life's GICs issued to Honeywell were not annuities under the New Mexico's statutory definition because they did not provide periodic payments dependent on the continuation of human life. *See* § 59A–20–2(A).

8. Honeywell appeals, asking this Court to enforce the Guaranty Association's obligation to provide coverage for the plan participants. For the reasons that follow, we affirm.

*DISCUSSION*

■ 9. Where there is no issue of material fact, summary judgment is proper where the moving party is entitled to judgment as a matter of law upon clear and undisputed facts. *See First Nat'l Bank in Albuquerque v. Nor–Am Agric. Prods., Inc.*, 88 N.M. 74, 80, 537 P.2d 682, 688 (Ct.App.1975). The decision here turns on the statutory definition of an annuity as applied to the GICs, not

on any disputed facts. Interpretation of statutes is a question of law which we review de novo. *See State v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995).

10. We begin our analysis by recognizing that our decision must be based on the wording of the New Mexico statute and that cases from other jurisdictions are persuasive only to the extent that their statutes are similar to ours. *See State v. Dunsmore,* 119 N.M. 431, 434, 891 P.2d 572, 575 (Ct.App.1995); *El Centro Villa Nursing Ctr. v. Taxation & Revenue Dep't,* 108 N.M. 795, 797–98, 779 P.2d 982, 984–85 (Ct.App.1989). Thus, for example, cases holding that GICs are not annuities based on statutes that exclude "any annuity contract or group annuity certificate which is not issued to and owned by an individual" or cases holding that GICs are annuities based on statutes that specifically include "unallocated annuity contracts" which in turn include "guaranteed interest contracts" will not be persuasive in New Mexico. *See Oklahoma Life & Health Ins. Guar. Ass'n v. Hilti Retirement Sav. Plan,* 939 P.2d 1110, 1111–12 (Okla.1997); *Unisys Corp. v. Texas Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n,* 943 S.W.2d 133, 137 (Tex.App.—Austin 1997). Rather, we decide this case based on New Mexico's statutory language, informed by cases that consider similar language under similar legislative and administrative circumstances.

11. We first consider the Legislature's stated purpose in enacting the Guaranty Law:

> The purpose of this article is to provide a mechanism to facilitate continuation of coverage, payment of covered claims under certain *insurance policies,* to avoid excessive delay in payment and avoid financial loss to *claimants or policyholders* because of insolvency of an insurer, to assist in detection and prevention of insurer insolvencies and provide an association to assess the cost of such protection among insurers.

Section 59A–42–2 (emphasis added). On its face, then, the purpose of the Guaranty Law, in its clearest terms, is to protect insureds (policyholders or claimants under policies) from loss resulting from an insurer's insol-vency. More specifically, when an insurer becomes insolvent, the Guaranty Law works to protect those policyholders and claimants who would suffer loss. The import of this language is that it applies to insurance companies as insurers.

12. Honeywell argues strenuously that the GICs were annuities under New Mexico statutory law and therefore entitled to coverage by the Guaranty Association. We set out Honeywell's argument, and give our reasons for rejecting it. Honeywell's argument consists of two branches. According to Honeywell, (1) the Executive Life GICs are annuities because they are agreements to make periodic payments dependent upon the continuance of human life; and (2) the GICs are also annuities because of the participant's right to purchase individual annuities upon retirement.

13. Section 59A–42–3(A) outlines the scope of the Guaranty Law. It states:

> A. Chapter 59A, Article 42 NMSA 1978 applies to direct life insurance policies, health insurance policies, *annuity contracts and contracts supplemental to life and health insurance policies and annuity contracts,* issued or assumed by an authorized insurer, or assumed by an unauthorized insurer directly or indirectly from an authorized insurer.

(Emphasis added.) New Mexico statutory law defines annuities as follows:

> A. an "annuity" is a contract under which obligation is assumed by the issuer to make periodic payments for a specific term or terms where the making or continuance of all or some such payments or the amount of any such payment is *dependent upon continuance of human life....*

Section 59A–20–2 (emphasis added). Honeywell argues that the GICs were annuities because Executive Life's "obligations as to each participant's investment in the GICs were 'dependent upon the continuance of human life[.]' "

14. Excluding those cases that interpret materially different statutes for the reasons stated above and excluding those cases that appear to simply follow what we perceive to be the two leading cases, we find that the

opposing views and arguments are well set forth in *Board of Trustees of Maryland Teachers & State Employees Supplemental Retirement Plans v. Life & Health Insurance Guaranty Corp.*, 335 Md. 176, 642 A.2d 856 (1994) (holding Executive Life GICs to be annuities) [hereinafter *Board of Trustees,*] and *Arizona Life & Disability Insurance Guaranty Fund v. Honeywell, Inc.*, 187 Ariz. 146, 927 P.2d 806 (App.) (holding Executive Life GICs not to be annuities), *review and cross-petition for review granted* (1996) [hereinafter *Arizona Life]*. Honeywell relies heavily on the Maryland case. There, the court found the same GICs as those in question here to be annuities under Maryland law. The court looked at the possibility that Executive Life could be called upon, whenever a participant died, to pay its pro rata share of that participant's account in the plan at the promised rate of interest. *Board of Trustees*, 642 A.2d at 861. The court also looked to the fact that if Executive Life was called upon to pay prematurely in the event of a participant's death, the company's investment returns at that particular moment might be less than what it was committed to pay at maturity. This situation would make Executive Life's assumption of economic risk life-contingent insofar as Executive Life risked economic loss if a participant died before maturity of the GIC. *Id.* The court added that Executive Life's contractual assumption included the economic risk, though remote, "that a catastrophe or epidemic would result in the deaths of large numbers of participants in a relatively brief span of time." *Id.*

15. The Guaranty Association answers that the Executive Life GICs were not annuities because Executive Life was not promising periodic payments to anyone over the course of a lifetime, such that payments would continue beyond a fixed term if a beneficiary continued to live past that time. The Guaranty Association argues that assumption by the insurer of the risk of longevity is key to the definition of an annuity. As authority for its position, the Guaranty Association relies on the Arizona case. The *Arizona Life* court, examining the statutory definition and Honeywell's similar argument there, said an annuity existed where

some or all of the payments from the financial institution to the annuitant "*is* dependent upon the continuance of human life." A.R.S. § 20–254.01 (1990) (emphasis added). Honeywell's interpretation of the statute would require us to hold that a contract is an annuity if the making or amount of the payments "may" depend on the continuance of human life, or if the payments "potentially" depend upon the continuance of human life. [Executive Life's] payments were not affected by the death of an employee alone, but were affected only if the trustee also elected to pay the employee's benefits by a withdrawal from the GIC. This further condition means that payments under the GIC's did not depend on the continuance of human life.

*Arizona Life*, 927 P.2d at 811–12.

16. We find no particular fault with the Maryland Court of Appeals' analysis in *Board of Trustees*. We note, however, that there was an extensive legislative history in Maryland, as well as attorney general opinions and insurance commission interpretations of Maryland law to justify that court in deciding that the GICs were annuities. *Board of Trustees*, 642 A.2d at 862–66. In addition, the court was able to construe Maryland's statutory definition of annuities more broadly than we may here. That state's definition included contracts "providing for" annuities, and the court could more reasonably construe this language as encompassing the GICs with options specifying annuities. *Id.* at 861. There is, however, no such history or statutory language in New Mexico. We simply face our statutory definition of annuities and the GICs. Therefore, based on New Mexico's plain statutory language and the nature of the GICs in this case, we conclude that the *Arizona Life* court's analysis provides a better rationale for deciding this case.

17. The Guaranty Association also answers Honeywell's assertion that the GICs were annuities by arguing that the GICs did not mandate withdrawals upon the death of a plan participant; the GICs only provided for that as a possibility. In its reply brief,

Honeywell says that this argument is wrong because the plan required withdrawal upon the death of a participant. The plan, however, does not dictate that payment come from the GICs. Rather, the plan left withdrawals of the funds from the GICs to the trustee's discretion. The trustee had the discretion to pay the beneficiary from funds other than Executive Life, without demanding premature withdrawal of a portion of the GIC. The Guaranty Association represents that in fact funds have rarely, if ever, been withdrawn prematurely; death benefits were paid from other funds. The plan only required that plan benefits be distributed upon a participant's death, but the source of the funds with which to pay the plan benefits was left open ended. Also going against Honeywell is that the very section of the "Investment Plus Plan" it cites to, claiming withdrawals were mandatory, allows a participant's beneficiary to choose an annuity instead of payment. The option of expressly choosing an annuity in place of payment after the death of a participant implies strongly that the payment was not itself an annuity.

18. We agree with the Guaranty Association. Under the GICs, a plan participant held an option to purchase an annuity after retirement. This option is perhaps the clearest demonstration that the GICs were not themselves annuities. An option to purchase an annuity does not create an annuity contract, only the possibility of a separate contract for an annuity in the future. *See Arizona Life*, 927 P.2d at 814 (provision allowing purchase of annuity is not itself an annuity); *see also Boothe Fin. Corp. v. Loretto Block, Inc.*, 97 N.M. 496, 498, 641 P.2d 527, 529 (Ct.App.1982) (exercise of option to purchase land converted option to bilateral contract). Since only an exercise of the option to purchase an annuity contract could create an annuity, it follows that the Executive Life GICs were not themselves annuity contracts.

19. We hold that the Executive Life GICs were not annuities under Section 59A–20–2 because payment was not dependent upon continuance of human life. Payment did not depend on the continuation of human life because there was no requirement for the trustee to pay out of the GICs whether an employee died, retired, or transferred funds. But even if the trustee had to pay out of the GICs at the death of a participant, this seems to make payment contingent not upon the continuance of human life, but contingent upon death, the very opposite of what defines an annuity. Payment did not continue in the event of the continuance of human life as required by the statute.

20. Honeywell attempts to counter this argument by its contention that the GICs were required to be paid in installments over the course of several years and would not be paid in the same amounts if participants died and the trustee were to elect to pay those participants' shares out of the GICs, as the documents allowed. Thus, Honeywell contends that the GICs come within the exact definition of annuity under Section 59A–20–2(A), i.e., (1) periodic payments (2) dependent on the continuation of human life. We disagree because Honeywell's argument rests on a possibility that "may" occur—the trustee's election to take participants' shares out of the GICs—whereas the statutory definition states that "an 'annuity' *is* [not 'may be'] a contract ... to make periodic payments ... where the making or continuance of all or some such payments or the amount of any such payment *is* [not 'may be'] dependent upon continuance of human life." To the extent that Honeywell's argument ignores the precise wording of the statute, we must reject it. *See Arizona Life*, 927 P.2d at 811–12 (rejecting this same argument for the same reasons). We therefore approve the decision of the trial court on these grounds.

21. Finally, Honeywell argues generally that the purpose of the Guaranty Association is to protect New Mexico residents. As such, Honeywell urges us to liberally construe the Guaranty Law because of its humanitarian policy and to enforce coverage in this instance. We decline to give the Guaranty Law any construction but a reasonable one since the language of the statute is clear as applied to the GICs in this case. *See United Water N.M. Inc. v. New Mexico Pub. Util. Comm'n*, 121 N.M. 272, 276, 910 P.2d 906, 910 (1996) (statute should be given reasonable interpretation in accordance with the Legislature's apparent purpose); *see also*

**690**

*Unisys Corp.*, 943 S.W.2d at 140 (even though Texas Guaranty Act provided for liberal construction, court was not permitted to ignore statutory language excluding coverage of certain unallocated annuity contracts). We therefore decline to construe the Guaranty Law more broadly than its plain language allows.

*CONCLUSION*

22. For the foregoing reasons we affirm the district court's decision.

23. **IT IS SO ORDERED.**

DONNELLY and BOSSON, JJ., concur.