500 S.E.2d 193

SOUTH CAROLINA LIFE AND ACCIDENT AND HEALTH
INSURANCE GUARANTY ASSOCIATION, Respondent,

v.

LIBERTY LIFE INSURANCE COMPANY, Appellant.

No. 2842.

Court of Appeals of South Carolina.

Heard April 9, 1998.

Decided May 11, 1998.

Rehearing Denied June 18, 1998.

David W. Robinson, II, and Durham T. Boney, both of Robinson, McFadden & Moore, Columbia, for appellant.

John C. Bruton, Jr., of Sinkler & Boyd, Columbia, for respondent.

GOOLSBY, Judge:

This case involves the interpretation of the South Carolina Life and Accident and Health Insurance Guaranty Association Act (Guaranty Act). The trial court issued a declaratory judgment absolving the South Carolina Life and Accident and Health Insurance Guaranty Association (the Association) of liability for coverage of certain investment contracts sold by Liberty Life Insurance Company (Liberty). Liberty appeals. We affirm.

*Facts*

In 1980, at the request of Hunt, Dupree and Rhine, a benefits consulting firm, Liberty designed an insurance product to be used by trustees and managers of employee retirement plans. This product consisted of two documents that Liberty intended to be sold together: (1) an annual renewable

term (ART) life insurance policy for each participant in a firm's retirement plan and (2) a reserve deposit fund agreement (RDFA) between the trustee of each plan and Liberty. The ARTs provided for six annuity settlement options and set forth tables of rates and assumptions for each option. The ARTs are not at issue here, except to the extent that various provisions within them are referenced in the terms governing the RDFAs.

The RDFAs provided that retirement plan trustees would make contributions in actuarially determined amounts. In addition, the RDFAs guaranteed that funds deposited would earn at least four per cent interest annually. A retirement plan trustee could terminate the agreement at any time and require Liberty to return the entire investment, with accrued interest, to the retirement plan. Except for termination, however, a trustee could withdraw funds only upon written request "(1) to purchase annuities for retiring participants[;] ... (2) to effect the payment, or cover the cost, of any other participant's benefits provided under the Trust; (3) or to provide a paid up Life Insurance Contract; [or] (4) to pay to the Trustee any terminated participant's nonvested interest." Liberty also guaranteed that for ten years after the effective date of the agreement, a trustee could purchase an annuity under the settlement option provisions in the ART life insurance policies.

Liberty submitted a prototype of the RDFA to the South Carolina Department of Insurance, which first approved the plan for sale on December 16, 1980. The Department approved modified versions of the plan on December 1, 1981, and January 6, 1987. During 1980 and 1981, both the ART and RDFA products were approved for sale by insurance departments in 27 other states. Beginning in 1981, Liberty sold RDFAs, coupled with ARTs, to retirement plan trustees in South Carolina and adjoining states.

On October 11, 1989, Investment Life and Trust Company (ILT), which was then a life insurance company licensed in South Carolina, assumed all of the RDFAs from Liberty. ILT later changed its name to Investment Life Insurance Company of America (ILA), redomesticated to North Carolina, and became licensed in South Carolina as a foreign insurer. In

1993, North Carolina declared ILA insolvent. The trustees of pension plans who had purchased RDFAs applied to the Association for protection. The Association denied the claims on the ground that the RDFAs were not covered policies under the Guaranty Act. Liberty agreed to provide the funds necessary for another insurer to assume the RDFAs while litigating the issue of coverage with the Association.

## Discussion

1. "Covered policies" under the South Carolina Guaranty Act

The focus of this controversy is whether the RDFAs were annuity contracts and, therefore, covered policies under the Act. The trial court determined that although an RDFA was a predecessor to a statutory annuity, it did not constitute one by itself.

Liberty argues the trial court erred in concluding the RDFAs were not covered policies under the Act. In support of this position, it contends the RDFAs were annuity contracts because of the ten-year guarantee of the periodic payment settlement options under which annuities could be purchased. Liberty further suggests the trial court improperly attached additional requirements to the statutory definition of an annuity, including (1) that the RDFAs had to specify when the annuities had to be exercisable, (2) that the RDFAs actually provide for periodic payments, and (3) that the insurer would have to make the annuity payments. We disagree.

The General Assembly enacted the Guaranty Act to protect insureds, beneficiaries, and others against failure in the performance of contractual obligations due to the impairment of insurers. S.C.Code Ann. § 38–29–30 (1989 and Supp.1997). Under the Act, when a foreign insurer becomes impaired, the Association may "[g]uarantee, assume, or reinsure, or cause to be guaranteed, assumed, or reinsured, the covered policies of residents." S.C.Code Ann. § 38–29–70(4)(a) (1989 and Supp. 1997). Covered policies are "direct life insurance policies, accident and health insurance policies, annuity contracts, and contracts supplemental to life and accident and health insurance policies and annuity contracts issued by persons autho-

rized to transact insurance in this State ...." S.C.Code Ann. § 38–29–40 (1989 and Supp.1997).

The elementary and cardinal rule of statutory construction is that the court must determine the intent of the legislature. *Horn v. Davis Elec. Constructors, Inc.*, 307 S.C. 559, 416 S.E.2d 634 (1992). The words of the statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand its operation. *First Baptist Church of Mauldin v. City of Mauldin*, 308 S.C. 226, 417 S.E.2d 592 (1992). Statutes, as a whole, must receive practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of lawmakers. *Whiteside v. Cherokee County Sch. Dist. No. 1*, 311 S.C. 335, 428 S.E.2d 886 (1993). The Guaranty Act is to be liberally construed. S.C.Code Ann. § 38–29–200 (1989 and Supp.1997). The legislature, however, in authorizing the Association "to take legal action necessary to avoid payment of improper claims," did not intend for every product insurance carriers sell to be covered by the Guaranty Act. S.C.Code Ann. § 38–29–70(11)(f) (1989 and Supp.1997).

Although the Guaranty Act does not define the term "annuity contract," the Insurance Code defines "annuity" as "every contract or agreement to make periodic payments, whether in fixed or variable dollar amounts, or both, at specified intervals." S.C.Code Ann. § 38–1–20(6) (Supp.1997). The trial court determined that, for the purpose of this litigation, the terms "annuity" and "annuity contract" were essentially the same. Although Liberty maintained at trial that the two terms were distinct concepts, it has not argued this point in its appeal.[1]

A typical RDFA provides for distribution of the entire fund upon termination of the agreement by the trustee. It also provides for distribution of part of the assets of the fund in lump sum for the trustee either to fund benefits as part of the retirement plan or to return a terminated employee's nonvested interest in the fund. It does not, however, provide for "periodic payments" at "specified intervals."

---

1. In fact, Liberty appears to concede this point in its argument that we should accept the Department's interpretation of the statutory definition of annuity.

In a case factually analogous to this one, the Virginia Supreme Court held guaranteed interest contracts (GICs) similar to the RDFAs here were not annuities because they did not specifically provide for periodic payments to individuals as required by statute. *Bennet v. Virginia Life, Accident & Sickness, Ins.*, 251 Va. 382, 468 S.E.2d 910 (1996). The Virginia Guaranty Act defines an annuity as an agreement "to make periodic payments in fixed dollar amounts pursuant to the terms of a contract for a stated period of time or for the life of the person or persons specified in the contract." *Id.* 468 S.E.2d at 913 (*quoting* Va.Code Ann. § 38.2–106 (1993)). Like the RDFAs here, the GICs provided only for the accumulation of funds at a guaranteed interest rate and for withdrawal of the funds on specific conditions. Although the withdrawn funds could be used to purchase an annuity, the *Bennet* court explained, "An undertaking to purchase an annuity in the future is not a present guarantee of annuity benefits." *Id.* at 914.[2]

Similarly, the Arizona Court of Appeals held GICs were not annuities under applicable statutory law. *Arizona Life & Disability Ins. Guar. Fund v. Honeywell, Inc.*, 187 Ariz. 146, 927 P.2d 806 (Ct.App.1996). In so holding, the court declared, "The provision allowing the purchase of an annuity is not itself an annuity. Rather, it is a clause accommodating a provision of the pension plan for the purchase of an annuity. . . . Whether an annuity would be purchased was entirely speculative." *Id.* 927 P.2d at 814.[3] *See also Krahling v. First Trust*

---

**2.** Liberty attempts to distinguish *Bennet* by citing language in the pertinent Virginia statute limiting coverage to policies issued to or owned by individuals. Although the South Carolina Guaranty Act does not include this limitation, we nevertheless view *Bennet* as persuasive authority because the Virginia Supreme Court cited an additional reason for holding the GICs did not satisfy the statutory requirements for annuities, namely, that they neither provided for periodic payments nor fixed a dollar amount to be paid. *Bennet*, 468 S.E.2d at 913–14.

**3.** The Supreme Court of Arizona vacated the holding that the GICs were not annuity contracts, concluding instead they were part of Honeywell's retirement plan and subject to express requirements in the plan providing, upon a member's death, a life-contingent payment defined as an "annuity," as that term is defined in Arizona statutory law. The supreme court, however, affirmed the holding of the court of appeals that the plan trustee's option to purchase an annuity contract upon a participant's retirement could not alone qualify the GICs as

*Nat'l Ass'n,* 123 N.M. 685, 944 P.2d 914, 918 (Ct.App.1997) ("An option to purchase an annuity does not create an annuity contract, only the possibility of a separate contract for an annuity in the future."), *cert. denied,* 123 N.M. 446, 942 P.2d 189 (1997).

We have reviewed the cases from other jurisdictions that have found contracts similar to the RDFAs are annuities covered by their states' guaranty acts and find them unpersuasive.[4]

We therefore find the option to purchase an annuity does not make the RDFAs annuities. If an RDFA itself were an annuity, an additional contract for periodic payments would not be necessary.

In addition, the RDFAs are not, as Liberty argues, eligible for coverage as "contracts supplemental to ... annuity contracts." S.C.Code Ann. § 38–29–40(1) (1989 and Supp.1997). *Black's Law Dictionary* defines "supplemental" as "[t]hat

---

annuities. *Arizona Life & Disability Ins. Guar. Fund v. Honeywell,* 190 Ariz. 84, 945 P.2d 805 (1997).

4. *See Texas Commerce Bank v. Garamendi,* 11 Cal.App.4th 460, 14 Cal.Rptr.2d 854, 859 (2d Dist.1992) (holding municipal bond GICs issued to banks are insurance annuities under California law because the pertinent statute did not limit the term "annuities" to annuities "upon the lives of persons or appertaining thereto"), *review denied* (Jan. 28, 1993); *Board of Trustees of the Md. Teachers & State Employees Supplemental Retirement Plans v. Life and Health Ins. Guar. Corp.,* 335 Md. 176, 642 A.2d 856, 859 (Ct.App.1994) (holding a GIC complied with the statutory definition of an annuity contract as "a contract providing for an 'annuity'"); *Honeywell, Inc. v. Minnesota Life and Health Ins. Guar. Ass'n,* 518 N.W.2d 557, 559 (Minn.1994) (pertinent statute specifically defined the term "contractual obligation" to include "an unallocated annuity contract which funds a qualified defined contribution pension plan pursuant to certain sections of the Internal Revenue Code of 1986"); *Minnesota Life and Health Ins. Guar. Ass'n v. Dep't of Commerce,* 400 N.W.2d 769 (Minn.Ct.App.1987) (analyzing the issue of the disputed coverage according to the standard of review for administrative findings of fact); *Unisys Corp. v. Pennsylvania Life and Health Ins. Guar. Ass'n,* 667 A.2d 1199 (Pa.Commw.Ct.1995) (contracts at issue provided participants with the option to choose from three types of annuity benefit payments); *Messagephone, Inc. v. Texas Life, Accident, Health, & Hosp. Serv. Ins. Guar. Ass'n,* 1998 WL 77995 (Tex.App.-Austin), *withdrawn* 966 S.W.2d 133 (Tex.App.-Austin) (pertinent statute specifically provided coverage for unallocated annuity contracts, which the court interpreted to include guaranteed investment contracts as well as guaranteed interest contracts).

which is added to a thing or act to complete it." *Black's Law Dictionary* 1438 (6th ed. 1990). An employee of the Association explained that a typical supplemental contract is a waiver of premium rider or an accidental death rider associated with a life insurance policy. The employee further testified that a base contract must qualify for coverage under the Guaranty Act before the supplemental policy is covered. *See* § 38–29–40(1) (limiting coverage of supplemental contracts to those contracts supplementing specified covered policies). Here, the RDFAs are separate contracts from the ART life insurance policies. At best, they only reference the annuity settlement options contained within the ART life insurance policies, but neither "add to" nor "complete" them. Under the Guaranty Act, then, the RDFAs are not eligible for coverage as contracts supplemental to annuity contracts.

2. The impact of other South Carolina statutory and regulatory law referencing deferred annuities

Liberty further contends the trial court's holding that the RDFAs were not annuities amounts to a determination making all group annuities unlawful. We disagree.

As Liberty indicated, numerous statutes and regulations recognize the existence of group annuities. *See, e.g.,* S.C.Code Ann. § 38–69–220 (1989) (exempting group annuities purchased under retirement plans or deferred compensation plans from the requirements of standard nonforfeiture law for individual deferred annuities) (*recodifying* S.C.Code Ann. § 38–8–20 (1976)); S.C.Code Ann. § 38–9–180 (1989) (setting a minimum standard for the valuation of group annuity contracts) (*recodifying* S.C.Code Ann. § 38–5–770 (1976)); 25A S.C.Code Ann. Regs. 69–12.1(4)(B) (1989) (exempting group annuities from regulation concerning replacement of life insurance and annuities); 25A S.C.Code Ann. Regs. 69–39 (Appendix) (1989) (Insurance Department's "Buyers Guide to Annuities" describing deferred annuity contracts as possibly including other features and benefit options such as deposit fund arrangements and fluctuating benefit rates). Although these statutes and regulations recognize the existence of deferred group annuities, they do not alter the statutory definition of an annuity as a contract making periodic payments. The Association's executive administrator testified there are group annui-

ties that make annuity payments directly to individuals and specifically name those individuals in the group annuity contracts. Here, however, the RDFAs are only the means to set up annuities and do not themselves provide for periodic payments, as required by the statutory definition of an annuity.

### 3. The impact of the approval of the RDFAs by the South Carolina Department of Insurance

■ In further support of its argument, Liberty contends the Department's approval of the RDFAs is entitled to deference by the courts. When it submitted the RDFAs to the Department, however, Liberty did not describe them as annuities, but rather as an "agreement [that] will be used in qualified pension cases in conjunction with a trust to accumulate funds to be used for the benefit of the participants." The record does not indicate the reason for the Department's stamp of approval or the conditions required for approval.[5]

■ Even if the Department's approval of the contract is interpreted as approving the RDFAs as annuities, this interpretation is not controlling on the courts. The Department's approval of the contract does not conclusively establish that the contract meets the requirements of insurance law. *See Osborne v. Allstate Ins. Co.,* 319 S.C. 479, 462 S.E.2d 291 (Ct.App.1995) (reversing the trial court's conclusion that because the insurer's offer form was approved by the commissioner, it is conclusively presumed to comply with the applicable statutory requirements).[6] Although an administrative

---

5. Liberty argues the Department had to have approved the RDFAs as annuities because the Insurance Commissioner, by statute, may only license an insurance company to transact the business of life insurance, annuities, and accident and health insurance. By implication, according to Liberty, because the RDFAs were neither life insurance contracts nor accident and health insurance contracts, the Department's "Approved" stamp must have meant the Department approved the RDFAs for sale as annuity contracts. In the absence of any evidence in the record supporting this reasoning, we find this contention unpersuasive. As pointed out by the Association, the Department could have been exercising its statutory grant of general jurisdiction to "supervise and regulate the rates and services of every insurer in this State" because the RDFAs were sold in connection with life insurance policies. S.C.Code Ann. § 38–3–110(1) (1989 and Supp.1997).

6. *Osborne* was affirmed in an unpublished opinion pursuant to Rule 220(b)(1), SCACR, and *Butler v. Unisun Ins. Co.,* 323 S.C. 402, 475

agency's interpretation of a statute is entitled to deference, it is not controlling when such deference would be inappropriate. *See Monroe v. Livingston,* 251 S.C. 214, 161 S.E.2d 243 (1968) (an administrative interpretation should not be the basis for the perpetuation of a patently erroneous application of a statute).

**AFFIRMED.**

HEARN and STILWELL, JJ., concur.

S.E.2d 758 (1996). *Osborne v. Allstate Ins. Co.,* 96–MO–00222 (S.C. Sup.Ct. filed October 10, 1996).