545 S.E.2d 270

**SOUTH CAROLINA LIFE AND ACCIDENT AND HEALTH INSURANCE GUARANTY ASSOCIATION, Respondent,**

v.

**LIBERTY LIFE INSURANCE COMPANY, Petitioner.**

No. 25274.

Supreme Court of South Carolina.

Heard Oct. 3, 2000.

Decided April 2, 2001.

David W. Robinson, II, and Kevin K. Bell, both of Robinson, McFadden & Moore, of Columbia, for petitioner.

438

John C. Bruton, Jr., and Frank W. Cureton, both of Haynsworth Sinkler Boyd, PA, of Columbia, for respondent.

PLEICONES, Justice:

We granted certiorari to review the Court of Appeals' affirmation of the trial court's ruling that certain investment contracts were not covered by the South Carolina Life and Accident and Health Insurance Guaranty Association ("the Association"). *South Carolina Life & Accident & Health Ins. Guar. Ass'n v. Liberty Life Ins. Co.*, 331 S.C. 268, 500 S.E.2d 193 (Ct.App.1998). Liberty Life Insurance Company ("Liberty") contends the contracts are annuities entitled to coverage. We disagree and affirm.

## BACKGROUND

### The Guaranty Act

The Association was created in 1972 when the legislature passed the South Carolina Life and Accident and Health Insurance Guaranty Act ("the Act"), codified at S.C.Code Ann. §§ 38–29–10, *et seq.* (Supp.1999). The Association guarantees, assumes or reinsures contractual obligations of insurers who become financially unable to meet their obligations. *See* S.C.Code Ann. § 38–29–70. To provide this protection, the Association assesses member insurers at rates based on the value of policies or contracts held by the respective insurer.[1] *See* S.C.Code Ann. § 38–29–80. Only certain policies come within the protection afforded by the Act. *See* S.C.Code Ann. § 38–29–40. The Act defines those policies as "direct life insurance policies, accident and health policies, annuity contracts, and contracts supplemental to life and accident and health insurance policies and annuity contracts issued by persons authorized to transact business in this State...." *Id.*

The Act's purpose is "to maintain public confidence in the promises of insurers by providing a mechanism for protecting policy owners, insureds, beneficiaries, annuitants, payees, and assignees of [covered policies] against failure in the perfor-

---

1. At oral argument, the Association indicated that no assessments have ever been levied against Liberty or Investment based on the value of the contracts at issue in this case.

mance of contractual obligations due to impairment of the insurer issuing these policies or contracts." S.C.Code Ann. § 38–29–30. The Act is to be liberally construed. *See* S.C.Code Ann. § 38–29–200. The Association may "[t]ake legal action to avoid payment of improper claims." S.C.Code Ann. § 38–29–70(11)(f).

While the Act does not define "annuity contracts," "annuity" is defined elsewhere in the insurance code as "every contract or agreement to make periodic payments, whether in fixed or variable dollar amounts, or both, at specified intervals." S.C.Code Ann. § 38–1–20(6) (Supp.1999). The interpretation of this definition and the intent of the legislature in promulgating the Act are at the heart of the instant dispute. "All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute." *Broadhurst v. City of Myrtle Beach Election Comm'n*, Op. No. 25191, 342 S.C. 373, 380, 537 S.E.2d 543, 546 (2000).

*Liberty and RDFA*

Early in the 1980s, Liberty entered into a number of contracts, called Reserve Deposit Fund Agreements ("RDFA"),[2] with trustees of various privately funded employee retirement plans whereby the trustees periodically deposited money with Liberty, the money ultimately to be used to fund retirement benefits to participating employees. For the first ten years of the contracts, Liberty guaranteed a minimum four percent interest rate, or such greater rate as determined by Liberty.

The terms of the RDFA allowed the plan trustee to terminate the contract at any time and require Liberty to return the entire amount deposited, with accrued interest, to the

---

**2.** This opinion refers to "unallocated annuities" at times. The National Association of Insurance Commissioners Life and Health Insurance Guaranty Association Model Act ("N.A.I.C. Model Act") defines "unallocated annuity contract" as "an annuity contract or group annuity certificate which is not issued to and owned by an individual, except to the extent of any annuity benefits guaranteed to an individual by an insurer under the contract or certificate." While the RDFA arguably meet this definition, such characterization is not dispositive of the question whether they meet our statutory definition.

retirement plan. Additionally, partial withdrawals were permitted for any of four purposes: (1) *to purchase an annuity*, from Liberty or any third party, for a retiring employee; (2) to purchase a paid-up life insurance policy for an employee; (3) to pay any benefit due a retiring employee under the retirement plan, e.g., a lump sum payment, an installment payment, or *an annuity*, at the option of the retiring employee; or, (4) if an employee terminated her employment prior to retiring, the trustee could recover the departing employee's non-vested interest in the retirement plan. These withdrawal options were guaranteed during the first ten years of the contract.

Liberty subsequently sold the contracts to Investment Life Insurance Company of America ("Investment"). Investment, initially a South Carolina insurer, later redomesticated in North Carolina, while maintaining a license to sell insurance in South Carolina.

In 1993 Investment was declared insolvent by the State of North Carolina. When Investment's assets were not sufficient to meet its obligations under the RDFA, a number of plan trustees applied to the Association for reimbursement. The Association denied coverage. This litigation ensued after Liberty paid the shortfall and accepted an assignment of the trustees' claims against the Association.

## ISSUE

Are the RDFA covered under the Act?

## ANALYSIS

■ The crux of Liberty's argument is that because the RDFA contractually obligated Liberty either to sell annuities to plan trustees for the benefit of retiring employees, or to return funds to the trustee for use in purchasing an annuity from some third party, the RDFA meet the statutory definition of annuity.

The trial court and Court of Appeals determined that, since the RDFA contemplate an additional requirement, i.e. that the trustee enter into a contract separate and apart from the RDFA in order to initiate a stream of payments to a retiring employee, the RDFA themselves are neither covered contracts nor contracts supplemental to covered contracts. We agree.

*Annuity Purchase Option*

Liberally construing the Act, the RDFA are not, in our opinion, annuities. As pointed out by the Court of Appeals, the RDFA do not "make periodic payments at specified intervals." Instead, they provide the trustees with *an option* to purchase annuities.

The Supreme Court of Virginia found that "an undertaking to purchase an annuity in the future is not a present guarantee of annuity benefits." *Bennet v. Virginia Life, Accident & Sickness Ins. Guar. Ass'n*, 251 Va. 382, 468 S.E.2d 910, 914 (1996). The court in *Bennet* held that Guaranteed Interest Contracts (GIC), contracts similar to the RDFA in the instant case, were not annuities covered by the State's guaranty association. Our Court of Appeals cited *Bennet* as support for its conclusion that the RDFA were not entitled to coverage as annuities.[3] While *Bennet*'s reasoning is sound, the Virginia statutory definition of annuity is significantly different from our own. The Virginia guaranty act excluded from coverage annuities "not issued to or owned by an individual. . . ." *Id.* at 912. The *Bennet* court based its holding that the GIC were not covered by the guaranty act upon the fact that the plan trustee, and not the individual employees, owned the GIC.

The Court of Appeals also relied on *Arizona Life & Disability Ins. Guar. Fund v. Honeywell, Inc.*, 187 Ariz. 146, 927 P.2d 806 (1996),[4] wherein the Arizona Court of Appeals held that GIC were not annuities covered by that State's guaranty act. There the controlling statute defined annuities as "all agreements to make periodic payments . . . where the making or continuance of all or some of a series of such payments, or the amount of such payment, is dependent upon the continuation of human life."[5] *Id.* at 811. The Arizona court determined that the GIC were not annuity contracts because the payments under the GIC were not contingent on the continua-

---

**3.** *See Liberty Life Ins. Co.*, at 273, 500 S.E.2d at 196.

**4.** *See Liberty Life Ins. Co.*, at 273, 500 S.E.2d at 196.

**5.** This definition is virtually identical to the South Carolina definition of "annuity" in effect at the time Liberty entered into the contracts at issue. The definition was amended in 1990 to delete the requirement that the payments be "dependent upon the continuation of human life."

tion of human life. The court further held that the GIC were not annuities because the existence *vel non* of an annuity was entirely speculative and dependent on the trustee's decision to exercise one of a number of options under the contract, i.e. the option to purchase an individual annuity.[6] Much of the court's reasoning applies to the RDFA here:

> Whether an annuity would be purchased was entirely speculative. First, an employee who invested in the fixed income fund must have retired. Second, the employee would had to have selected the annuity option from the number of options available under Honeywell's retirement plan. Third, the trustee must have elected to direct [the insurer] to purchase the annuity by withdrawing money from the fund value of the [GIC], as opposed to purchasing an annuity from other funding sources.

*Id.* at 814. Similar procedures were required to initiate a stream of payments to a plan participant in the case *sub judice.*

As pointed out by Liberty, the decision of the Arizona Court of Appeals was subsequently overruled by the Arizona Supreme Court. *Arizona Life & Disability Ins. Guar. Fund v. Honeywell, Inc.*, 190 Ariz. 84, 945 P.2d 805 (1997). However, the Arizona Supreme Court based its reversal on the lower court's finding that the GIC's payment provisions were not life contingent. The supreme court agreed with the lower court that "[e]ven though the GIC allows the Trustee to purchase an annuity contract upon the participant's retirement, we find this alone cannot qualify the GIC contract as an annuity.... Instead, we conclude that the [GIC] are annuities ... *only* because required payments under the contracts are life contingent." *Id.* at 813 (emphasis added).[7]

---

The change in the statutory definition does not affect the outcome of this dispute.

6.  In fact, the court afforded weight to the fact that the annuity purchase option contained in the GIC had *never* been exercised by a plan trustee. In the present dispute, the Association received no response to discovery requests asking Liberty to identify any instances where the annuity purchase option had been exercised by a plan trustee.

7.  The Arizona legislature, in 1995, prospectively excluded GIC from guaranty fund coverage. *See* Ariz.Rev.Stat. Ann. § 20–682(B)(4) (West 1995).

Liberty does not argue that the RDFA are annuities because they make payments which are dependent upon the continuation of human life, but because the RDFA obligated Liberty to make periodic payments should the trustee and plan beneficiary so elect. With that in mind, it is not clear how *Honeywell, supra,* provides support for its position.

■ The New Mexico Court of Appeals agreed that an option to purchase an annuity was not an annuity, stating:
[u]nder the [GIC], a plan participant held an option to purchase an annuity after retirement. This option is perhaps the clearest demonstration that the [GIC] were not themselves annuities. An option to purchase an annuity does not create an annuity contract, only the possibility of a separate contract for an annuity in the future.... Since only an exercise of the option to purchase an annuity contract could create an annuity, it follows that the Executive Life [GIC] were not themselves annuity contracts.
*Krahling v. First Trust Nat'l Ass'n,* 123 N.M. 685, 944 P.2d 914, 918 (1997). The statutory definition of "annuity" in *Krahling* was synonymous with that in *Honeywell, supra,* and is distinguishable from our current definition. However, we are persuaded by the court's opinion that an option to purchase an annuity in the future does not constitute a present annuity.

In *Oklahoma Life & Health Ins. Guar. Ass'n v. Hilti Retirement Sav. Plan,* 939 P.2d 1110 (Okla.1997), the Oklahoma Supreme Court noted that twenty-two states statutorily provide guaranty coverage for unallocated annuity contracts [8] similar to those involved in the instant dispute. *See id.* at 1112. All of the states cited limit the maximum coverage by the guaranty associations to amounts ranging from $1,000,000

8. The Oklahoma guaranty act expressly excludes unallocated annuity contracts (see fn. 1) from coverage. In addition to those cited by the Oklahoma court, our research reveals another eight states which either limit or deny coverage for unallocated annuities. *See* Colo.Rev.Stat. Ann. § 10–20–104 (1999)(no coverage); Idaho Code § 41–4303 (2000)(no coverage); Iowa Code § 5808C.8 (1998)($1,000,000 limit); Ky.Rev.Stat. Ann. § 304.42–030 (1998)(no coverage); Nev.Rev.Stat. § 686C.035 (1999)(no coverage); N.J. Stat. Ann. § 17B:32A–3 (1996)($2,000,000 limit); S.D. Codified Laws § 58–29C–4 (1989)(no coverage); *and* W. Va.Code § 33–26A–3 (1993)($1,000,000 limit).

to $7,500,000 per contract. Georgia and North Carolina have limits of $5,000,000.[9] *See id.* The absence of a limitation of coverage for unallocated annuities in our statute supports our conclusion that the legislature did not contemplate coverage for this type of funding mechanism when it passed the Act.

We are cognizant of those decisions which have found similar contracts to be within the protection afforded by the particular state's guaranty act and do not find them compelling. *See, e.g., Board of Trustees of the Md. Teachers & State Employees Supplemental Retirement Plans v. Life & Health Ins. Guar. Corp.*, 335 Md. 176, 642 A.2d 856 (1994); *Minnesota Life & Health Ins. Guar. Ass'n v. Department of Commerce*, 400 N.W.2d 769 (Minn.Ct.App.1987); *and Unisys Corp. v. Pennsylvania Life & Health Ins. Guar. Ass'n,* 667 A.2d 1199 (1995), *aff'd* 546 Pa. 256, 684 A.2d 546 (1996). Our review of these cases indicates that they were decided under statutory or judicial definitions of "annuity" or "annuity contract" distinguishable from our own. It is also noteworthy that subsequent to these decisions, the state legislatures of Minnesota[10] and Pennsylvania[11] amended their guaranty acts to limit the coverage afforded unallocated annuities akin to RDFA, while the Maryland legislature excluded them from coverage.[12]

Liberty advances the additional argument that the Insurance Commissioner's approval of the RDFA indicates they were approved for sale as annuity contracts. It arrives at this conclusion employing a process of elimination, reasoning that since the contracts were not life insurance contracts and not health insurance contracts, they must have been approved as annuity contracts. However, Liberty presented no evidence that the RDFA were approved as annuity con-

---

9. The current version of the N.A.I.C. Model Act limits exposure to $5,000,000, per contract-holder, for unallocated annuity contracts. *See* N.A.I.C. Model Act § 3(C)(2)(e). It also contains opt-out provisions whereby a state may elect to completely exclude unallocated annuity contracts from coverage.

10. *See* Minn.Stat. Ann. § 61B.19 (West 1996).

11. *See* Pa. Stat. Ann. tit. 40, § 991.1703 (West 1999).

12. *See* Md.Code Ann., Insurance § 9–403 (1996).

tracts and its conclusion is purely speculative. In any event, this Court is not bound by the Insurance Commissioner's determination. *Cf. Wilkes v. Freeman,* 334 S.C. 206, 512 S.E.2d 530 (Ct.App.1999), *cert. denied* (insurer's form offering underinsured motorist coverage did not comply with statute despite the fact the form had been approved by the Insurance Commissioner). The Insurance Commissioner's approval is entitled to some deference, but it is not dispositive. *See Richland County Sch. Dist. Two v. S.C. Dep't Educ.,* 335 S.C. 491, 517 S.E.2d 444 (Ct.App.1999).

### CONCLUSION

We hold that the RDFA are not annuities entitled to coverage under the Act. The statutory definition of "annuity" does not explicitly encompass options to purchase annuities; we decline to expand the statutory definition to include such options. The requirement that the trustee take the additional step of purchasing an annuity, separate and apart from the RDFA, prior to initiating a stream of payments convinces us these contracts are not annuities. If unallocated annuities are to be afforded guaranty act coverage, the General Assembly is the appropriate forum to assess the attendant policy consequences and to act based on its assessment.

Based upon the foregoing, we AFFIRM the decision of the Court of Appeals.

MOORE, WALLER and BURNETT, JJ., concur.

TOAL, C.J., dissenting in a separate opinion.

TOAL, Chief Justice:

I respectfully dissent. I would hold the Reserve Deposit Fund Agreements ("RDFA") are covered under the South Carolina Life and Accident and Health Insurance Guaranty Act ("Guaranty Act"), codified at S.C.Code Ann. § 38–29–10, *et seq.* (Supp.2000).

The Guaranty Act creates the South Carolina Life and Accident and Health Insurance Association ("Association"). S.C.Code Ann. § 38–29–50. The Association is comprised of all insurers authorized to transact business in this State. It guarantees, assumes, or reinsures the contractual obligations

of insurers who become financially unable to meet their obligations. S.C.Code Ann. § 38–29–70. However, the Guaranty Act only affords protection to defined policies as set forth in section 38–29–40. The question now before this Court concerns whether the RDFA's issued by Liberty Life are "covered policies" included in the definition of section 38–29–40.

Section 38–29–40 (1) provides:

This chapter applies to direct life insurance policies, accident and health insurance policies, annuity contracts, and contracts supplemental to life and accident and health insurance policies and annuity contracts issued by persons authorized to transact insurance in this State at any time.

At issue here is the provision in the RDFA contracts which allow the trustee to partially withdraw funds "to pay any benefit under the retirement plan such as a lump sum distribution, installment payment, or any annuity." The condition specifically provides:

Under the terms of the Trust, life insurance coverage is being purchased from the Company on the lives of the individual participants covered by the Trust. We guarantee for a period of up to ten years from the Effective Date of this Agreement that the Settlement Option provisions contained in such policy or policies *may be used as the basis for the annuity purchase guarantees* whereby a single sum may be applied to purchase a stated amount of life income . . . . (emphasis added)

In order to provide for the accumulation of the supplementary amounts necessary to purchase the *retirement annuities to which participants will become entitled* under the Trust there is hereby established in the name of the Trustee a [RDFA] to which the Employer . . . through the Trustee will make contributions . . . (emphasis added)

In deciding whether the RDFA's are covered policies, the Court should consider the legislative intent behind the Act in its entirety. *Joiner v. Rivas,* 342 S.C. 102, 536 S.E.2d 372 (2000) (a cardinal rule of statutory construction is to ascertain the intent of the legislature). The legislature has clearly directed that "[t]his chapter must be liberally construed to effect the purpose under section 38–29–30 which constitutes an aid and guide to interpretation." S.C.Code Ann. § 38–29–200.

The purpose of the Guaranty Act is expressed by the legislature as follows:

> The purpose of this chapter is to maintain public confidence in the promises of insurers by providing a mechanism for protecting policy owners, insureds, beneficiaries, annuitants, payees, and assignees of life insurance policies, accident and health insurance policies, annuity contracts, and supplemental contracts against failure in the performance of contractual obligations due to the impairment of the insurer issuing these policies or contracts.

S.C.Code Ann. § 38–29–30 (Supp.2000).

The Majority hold the Guaranty Act only covers annuity contracts or agreements which "make periodic payments ... at specific intervals" but does not cover contracts or agreements *to purchase* annuities which "make periodic payments ... at specific intervals." This is a distinction without a difference. The Association was set up to protect the beneficiary, and under either scenario above, the effect on a beneficiary when an Insurance Company fails is the same. The loser is always a beneficiary who has no control over the decisions of the trustee. If the trustee chooses unwisely, or purchases from an inadequately funded source, the beneficiary will suffer the loss of his retirement benefits. This is the exact situation the Guaranty Association was set up to prevent. The Association was designed to protect the policy holder from an insurance company's failure or inability to honor its contractual obligations. In the instant case, Liberty Life has assumed the responsibility for Investment Life Insurance Company's failure. However, in the future, there may not be such a company to step in and honor the contracts, which here consisted of a policy holder's retirement benefits. Retirement benefits are a necessity for many citizens of this State, and allowing contracts such as the RDFA's to escape coverage on the technical distinction between an "annuity contract" and a "contract to purchase an annuity" undermines the purpose of the Act and would have a dramatic impact on the financial stability of many retirees.

Furthermore, it is important to consider that these RDFAs are annuity insurance products, sold only by licensed insurance companies after approval by the South Carolina Depart-

ment of Insurance. What possibly could the legislature have intended the Guaranty Association to cover if not insurance products, sold by licensed insurance companies and approved by the Insurance Commission?

Finally, the Majority attempts to distinguish those decisions of other states which have found similar contracts to be within the protection afforded by the particular state's guaranty act. *See, e.g., Board of Trustees of the Md. Teachers & State Employees Supplemental Retirement Plans v. Life & Health Ins. Guar. Corp.*, 335 Md. 176, 642 A.2d 856 (1994); *Minnesota Life & Health Ins. Guar. Ass'n v. Department of Commerce*, 400 N.W.2d 769 (Minn.Ct.App.1987); *and Unisys Corp. v. Pennsylvania Life & Health Ins. Guar. Ass'n*, 667 A.2d 1199 (1995), *aff'd* 546 Pa. 256, 684 A.2d 546 (1996). The Majority finds these cases were decided based on definitions of "annuities" which are distinguishable from our own. However, the Majority adopts much of the reasoning of the courts in *Bennet v. Virginia Life, Accident & Sickness Ins. Guar. Ass'n, supra, Arizona Life & Disablility Ins. Guar. Fund v. Honeywell, Inc., supra,* and *Krahling v. First Nat'l Ass'n, supra,* where similar contracts were found not to be covered under their state's respective guaranty acts. Yet these states, as the majority admits, also have definitions of "annuities" which are distinguishable from our own. Again, the Majority is attempting to make a distinction without a difference.

Consistent with policy, purpose, and legislative intent, I would hold the RDFA's are "annuity contracts" covered under South Carolina' Guaranty Act.